**Dennis FELTINGTON,**
**Plaintiff-Appellant,**

v.

**MOVING PICTURE MACHINE OPERATORS UNION LOCAL 306 OF I.A.T.S.E., Robert Alter and Steve D'Inzillo, Defendants-Appellees.**

**No. 865, Docket 78–7583.**

United States Court of Appeals, Second Circuit.

Argued March 7, 1979.

Decided July 17, 1979.

As Amended Sept. 26, 1979.

---

Burton H. Hall, New York City, for appellant.

Philip D. Tobin, New York City (Cohn, Glickstein, Lurie, Ostrin & Lubell, Marc Rauch, New York City, of counsel), for appellees.

Before FRIENDLY, SMITH and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Dennis Feltington, a member of the Moving Picture Machine Operators' Union Local 306 of I.A.T.S.E. (hereinafter Local 306 or the Union),[1] appeals from a judgment of the District Court for the Southern District of New York, entered by Judge Gerard L. Goettel, dismissing his suit for damages against the Union and two of its officials, Robert Alter and Steve D'Inzillo, in which he claims that they disciplined him wrongfully in violation of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401 *et seq.*, and caused his false arrest and malicious prosecution in violation of New York law. The case presents a factual pattern and raises legal issues similar to some of those decided today in *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U. (Dolgen),* 605 F.2d 1228 (1979). The issues upon this appeal are (1) whether the trial court erred in ruling that the Union did not deprive appellant of his right to a fair trial under § 101(a)(5)(C) of the LMRDA[2] by prohibit-

---

1. Local 306 is affiliated with the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, A.F.L.–C.I.O.

2. § 101(a)(5)(C) of the LMRDA provides in pertinent part as follows:

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been . . . (C) afforded a full and fair hearing.

ing him from tape-recording a disciplinary proceeding against him which was recorded by a Union-retained court reporter and by retrying him before the same tribunal which had previously convicted him of identical charges, and (2) whether the trial court properly withheld from the jury appellant's claim for damages arising out of either of these alleged procedural errors. We affirm the district court's ruling on the tape-recording issue and reverse as to the other two issues.

As in *Rosario*, this lawsuit arose out of an altercation between a union member (Feltington) and an official (D'Inzillo) in the latter's Union office. Feltington had been a member of the Union for about eight years and D'Inzillo was its New York Business Representative. For about a year prior to the incident, which occurred on February 4, 1976, Feltington had served as a volunteer assistant to the Local's executives and was being trained for possible appointment as a paid permanent assistant. As an assistant, appellant was responsible for resolving disputes among Union members and for representing Local 306 in certain interunion meetings. D'Inzillo provided appellant with a letter of introduction for use in his dealings with those who might be unacquainted with him.

Appellant did not perform his duties to the satisfaction of the Local's executives, and was not appointed to the permanent position when it became available in January 1976. Feltington did not take this decision kindly. According to D'Inzillo, on the evening of February 3, 1976 appellant, accompanied by a "friend," accosted him near the Union office; the friend grabbed D'Inzillo's arm and warned him that he would suffer if appellant were not appointed to the assistantship. The next morning, Feltington entered D'Inzillo's office, closing the door behind him, and insisted on discussing his appointment. The parties dispute what happened; according to D'Inzillo, when he told Feltington that his appointment was out of the question and that Feltington should return the letter of introduction, the latter became violent, punching D'Inzillo in the face. The altercation ended with Feltington racing out of D'Inzillo's office, with a bloodied D'Inzillo making a faint attempt at pursuit.

A few weeks later D'Inzillo filed charges with the Union against appellant. A union trial was held on September 28, 1976 after several postponements due to appellant's refusal to accede to the trial committee's ruling that he could not record the proceedings, purportedly because of the risk that he would falsify the tapes. On the September trial date appellant agreed to desist from using his tape-recorder and to dismiss a court stenographer he had brought with him. The trial was held, following which the tribunal—the Union's Executive Board—found appellant guilty and recommended expulsion. These findings and recommendation were sustained by the Local's next general membership meeting.

Feltington pursued intraunion appellate remedies, and on November 30, 1976 the conviction was set aside by decision of I.A.T.S.E.'s president on the ground that the I.A.T.S.E. constitution required the Union to provide a stenographic record of a disciplinary proceeding. A new trial was scheduled for December 21, at which time the Union had present a reporter from a well-known court reporting service which it had retained to transcribe the proceedings. Appellant nonetheless insisted on tape-recording the trial. The trial committee, consisting of virtually the same individuals who had sat at the first trial, i. e., the Union's Executive Board, adjourned the trial, which was eventually rescheduled for May 10, 1977.

On May 10 the same impasse developed over appellant's desire to record the proceedings. This time appellant was told that if he did not submit to the Union's procedures, he would be tried *in absentia*. Feltington refused to leave or turn off his recorder. Allegedly for fear of violence, Robert Alter, Vice President of the Local and

Chairman of its Executive Board, had the police summoned to remove appellant. When the police arrived they advised appellant to vacate the Union offices, and when he refused he was arrested. Alter went to the police station and signed a complaint for criminal trespass, a charge which was ultimately adjourned in contemplation of dismissal, pursuant to N.Y.Crim.P.Law § 170.55 (McKinney). The trial committee proceeded to hear the case in Feltington's absence. It rendered the same fact findings and recommended the same sentence as before. Its recommendations were again ratified by the general membership, and this time sustained on appeal. In June 1977 appellant was expelled from the Union pursuant to his conviction by the Union.

In September 1977 appellant brought the present action after exhausting his intra-union appeals. He claimed that the Union, D'Inzillo, and Alter violated his right to a full and fair hearing under § 101(a)(5)(C) of the LMRDA, 29 U.S.C. § 411(a)(5)(C), because he was (1) tried before a panel that had previously convicted him of identical charges; (2) denied the right to cross-examine his accusers;[3] (3) denied the right to tape-record the proceedings; and (4) tried *in absentia* without his consent. Appellant further claimed that for these and additional reasons his conviction violated the Union's constitution, enforceable under New York contract law,[4] and that appellees violated § 609 of the LMRDA, 29 U.S.C. § 529, by prosecuting the disciplinary charges and expelling him in retaliation for his announced intent to oppose D'Inzillo at the

next Union election, and by procuring his arrest and filing a criminal complaint against him for remaining at the Union hall after refusing to comply with the trial committee's procedural rulings. Finally, appellant claimed that the arrest and filing of charges constituted false arrest and malicious prosecution under state law.

Upon appellant's motion for a preliminary injunction barring the Union from carrying out its decision to expel him and from interfering with appellant's exercise of his membership rights, Judge Goettel ruled that the Union's refusal to permit appellant to tape-record the disciplinary proceedings did not violate § 101(a)(5)(C) because the Union provided a certified stenographer to transcribe the proceedings, and that the Union was entitled to try appellant *in absentia* when he refused to desist from using his own recorder. Judge Goettel also rejected appellant's contention that retrial before the same panel that had previously convicted him was a *per se* denial of a trial before an unbiased tribunal, but remanded the parties to a magistrate for an evidentiary hearing on the question of whether any member of the second tribunal was actually biased.[5] 97 L.R.R.M. 2517 (S.D.N.Y.1977).

In a separate pretrial opinion upon appellees' motion for summary judgment, Judge Goettel ruled that appellees were not entitled to summary judgment on appellant's claims (1) that the arrest constituted wrongful discipline under § 609 of the LMRDA,[6] (2) that the expulsion violated

---

**3.** The allegation concerning the right to cross-examine witnesses is not raised in this appeal.

**4.** Appellant claimed that, in addition to the foregoing violations, the disciplinary proceeding was defective because the second trial was not held within 30 days of the reversal of the first conviction, and because the charges against him were not based on an express provision of the Union's constitution or by-laws. These claims were submitted to the jury, which found that no violation of the Union's constitution occurred.

**5.** Upon reargument following the issuance of Judge Motley's decision in *Rosario*, D.C., 441

F.Supp. 657, adopting the *per se* rule of disqualification, Judge Goettel adhered to his decision rejecting this approach. 97 L.R.R.M. 2522 (1978). Evidently the hearing before the magistrate was never held and Judge Goettel did not formally grant or deny the motion for preliminary injunction.

**6.** Judge Goettel determined that the definition of "discipline" for purposes of § 609 was broader than that for § 101(a)(5). See *Morrissey v. National Maritime Union*, 544 F.2d 19 (2d Cir. 1976).

the Union's constitution because of the pre-trial delay and lack of an express basis for the charges in the Union's constitution or by-laws, and (3) that appellant was arrested without cause. Judge Goettel, however, did dismiss the claim for malicious prosecution on the ground that the consensual adjournment of the charges was not a "favorable termination" as that phrase is used in tort law, and dismissed both tort claims against the Union on the ground that such claims against an unincorporated association could not be sustained without evidence that the membership consented to or ratified the tortious acts, which appellant had not alleged. 99 L.R.R.M. 3295 (S.D.N.Y.1978).

Prior to his charge to the jury, Judge Goettel ruled that the plaintiff's claim that the members of the Executive Board sitting as a tribunal at the second trial had prejudged the case against him because of their participation as the tribunal at the first trial was part of plaintiff's claim for injunctive relief and therefore a matter for the court to decide. The remaining issues were submitted to the jury in the form of special interrogatories, which the jury answered adversely to appellant without exception. After the verdict was returned, Judge Goettel announced his finding that appellant had not demonstrated bias or prejudice on the part of any of the members of the second tribunal, and rendered judgment for appellees.

## DISCUSSION

The two substantive issues raised on this appeal—(1) whether a union member has the right to record union trial proceedings against him, and (2) whether retrial of the same charges before substantially the same union tribunal that convicted him violates his rights under § 101(a)(5)(C) of the Act—have been resolved by us in *Rosario v. Dolgen.* There we held that a union member is entitled under § 101(a)(5)(C) to record his disciplinary trial when the union does not provide a reliable verbatim record. We reasoned that an accurate record of the proceeding is a valuable tool in arriving at the truth, that it poses no significant risk of fraud or obstruction in the proceeding, and that when the accused is willing to bear the expense of making it, the burden on the union is negligible.

■ Once the union has volunteered to provide such a transcript, however, the interest of the accused union member is satisfied. We see no merit in appellant's contention that a transcript prepared by an independent certified court reporter may be unreliable or edited at the request of union officials. The Union's refusal to permit appellant to make a supplemental recording of the trial in the present case may have been rather petty but it did not abridge any substantial right guaranteed to him by § 101(a)(5) as long as an accurate record was kept and made available.

■ We also agree with the trial court's decision that the Union was entitled to enforce its ruling by trying appellant *in absentia* when he refused to comply with it. A contrary result would enable an accused to dictate trial procedure even in the absence of any violation of § 101(a)(5)(C) or avoid discipline altogether.

■ Retrial of a union member before the same tribunal which previously convicted him on the identical charges cannot be countenanced, however, for reasons that are set out in *Rosario.* Appellees suggest that *per se* disqualification of the same tribunal is not warranted in the present case because the jury and the trial court found as a matter of fact that the members of the second tribunal had not prejudged appellant and because he waived his objection to the composition of the tribunal by failing to elect to have a trial before the general membership, which was available to him under the Union constitution.

■ These contentions are not persuasive. The risk is too high that individuals who have heard and decided a case will not consider the evidence with an open mind a second time. Moreover, they are unlikely to acknowledge that they have pre-

judged the case.[7] As we noted in *Rosario*, a union should have no difficulty finding alternative judges to replace those who are disqualified from sitting again.[8]

Appellees' waiver theory also fails for the same reason that a criminal defendant does not waive an objection to the composition of a jury by failing to request a bench trial. An accused entitled to trial before a particular type of tribunal may not be deprived of an *unbiased* tribunal of that type. Moreover, even if this "fair treatment" aspect of appellant's full and fair hearing claim could be waived, appellant would nevertheless have a valid "equal treatment" claim under § 101(a)(1) since other union members facing charges would presumably be assured of a trial before an unbiased tribunal. Appellees do not contend that appellant failed to object to the composition of the second trial tribunal. Appellant is therefore entitled to reinstatement as a member of the Union, subject to expulsion only after a full and fair hearing before an unbiased tribunal as mandated by § 101(a)(5)(C) of the LMRDA, 29 U.S.C. § 411(a)(5)(C), see *Addison v. Grand Lodge of the International Ass'n of Machinists*, 318 F.2d 504, 508 (9th Cir. 1963); *Allen v. International Alliance of Theatrical Stage Employees*, 338 F.2d 309, 317 (5th Cir. 1964).

Lastly, we turn to the question of whether appellant was entitled to present to the jury his claim of damages for wrongful expulsion due to his being retried before an improper panel.[9] Appellees argue that appellant waived whatever right he had to present this issue to the jury by failing to make a timely demand for the appropriate jury charge or to object to the proposed instruction and special interrogatories, as required by Fed.R.Civ.P. 49(a). This contention, however, is negated by the trial transcript, which reveals that at the close of the discussion between court and counsel about the charge to the jury, appellant suggested that if the court did not rule as a matter of law that the second tribunal was biased because it prejudged the case, the bias issue should go to the jury. The court ruled that this question was for the court to decide, since it was subsumed within the claim for equitable relief, i. e., that appellant be reinstated in the Union. Appellant thus made a timely demand for submission of the prejudgment question to the jury.

Appellees argue that in any event Judge Goettel correctly ruled that the factual question raised by the damage claim for wrongful expulsion, when incidental to the request for equitable relief, is nevertheless within the province of the court rather than that of the jury, citing *McCraw v. United Ass'n of Journeymen*, 341 F.2d 705, (6th Cir. 1965). We disagree. *McCraw* cannot be squared with *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), which hold that a party is entitled to a jury trial of a claim traditionally viewed as one to enforce "legal rights," such as a claim for compensatory or punitive damages for vio-

---

**7.** We find no basis for appellees' insistence that the jury found that the members of the second trial tribunal had not prejudged appellant. This question was not posed to the jury. The jury was asked whether the Union expelled appellant in retaliation for his political views or activities, which the jury answered in the negative. Appellees confuse, as the trial court apparently did, this finding with the finding that the tribunal had not prejudged appellant by virtue of having heard and decided the same charges once before.

Because of our disposition of the prejudgment issue, we need not address appellant's claim that the members of the trial committee were partial or beholden to D'Inzillo because of their political alliance with him or because of

their dependence on him for obtaining the most desirable jobs in the trade.

**8.** By virtue of § 101(b) of the LMRDA, a provision in the Union's constitution or by-laws limiting the pool of potential judges yields to the rule disqualifying those who have tried the case before.

**9.** The jury was asked whether appellant had proved that he was expelled in retaliation for his political views or in violation of the Union's constitution, and, if so, the amount of damages suffered from such wrongful expulsion. As noted, the jury found that no such wrongful expulsion occurred and, thus, did not reach the question of damages caused by denial in other respects of a full and fair hearing.

lation of a statutory right, whether or not it is "incidental" to an equitable claim. The reasoning of *McCraw*, moreover, was rejected in *Simmons v. Avisco, Local 713*, 350 F.2d 1012, 1018 (4th Cir. 1965), which has been approved in several circuits. *See Internat. Bro. of Boilermakers v. Braswell*, 388 F.2d 193, 197–98 (5th Cir., *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968); *Talavera v. Internat. Bro. of Teamsters, Local 85*, 351 F.Supp. 155, 159 (N.D. Cal.1972); *Paley v. Greenberg*, 318 F.Supp. 1366, 1367–68 (S.D.N.Y.1970). We agree with *Simmons* that a plaintiff suing under § 102 of the LMRDA is entitled to a jury trial of his damage claims notwithstanding the joinder of such claims with a request for equitable relief.

■ There remains the question of the potential scope of appellant's damage claims. Applying by analogy the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), we are persuaded that appellant may recover damages attributable to the deprivation of his procedural or due process rights to the extent that he can prove that it caused him mental or emotional distress, *id.* at 262–64.[10] Appellant, however, may not recover for damages caused by actual imposition of the invalid sanction itself if appellees demonstrate that he would have been convicted and sanctioned even if he had been retried before an openminded tribunal.[11] *Id.* at 260.

### CONCLUSION

■ We affirm the district court's decision that appellant was not deprived of a full and fair hearing required by § 101(a)(5)(C) of the LMRDA when the Union prohibited him from tape-recording

disciplinary proceedings against him which would be accurately recorded by a Union-retained independent court reporter, nor when the Union tried appellant *in absentia* after his refusal to comply with the latter procedure. We reverse the rulings that retrial before a panel which had previously convicted appellant on identical charges did not violate the fair hearing requirement, and that appellant was not entitled to present to the jury his claim for damages arising out of this violation. Accordingly, the case is remanded for further proceedings consistent with this opinion.[12]

---

10. Since the issue of causation also enters into the decision whether appellant is entitled to the equitable relief of reinstatement, and because other traditional discretionary grounds for denying equitable relief may apply, e.g. laches or unclean hands, appellant is not necessarily entitled to the injunctive order he requested. These are issues which the district court should consider on remand.

11. The result of the first trial is not evidence of the result an unbiased tribunal would have

reached, since the absence of a transcript precluded the intraunion appellate authority, and would have precluded a reviewing federal court, from determining whether other procedural or substantive errors tainted the first trial.

12. Appellant may, in the discretion of the trial court, be entitled to a reasonable attorney's fee for vindicating a procedural right under § 101. *See Rosario, supra,* at 1228.