**CHICAGO CARTAGE COMPANY, Plaintiff-Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 710, et al., Defendants-Appellees.**

No. 79–2014.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1981.

Decided Sept. 24, 1981.

Rehearing and Rehearing En Banc Denied Nov. 4, 1981.

Raymond Harkrider, Chicago, Ill., for plaintiff-appellant.

Stephen B. Rubin, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, FAIRCHILD, Senior Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

The International Brotherhood of Teamsters, Local No. 710 (the Union) and the Chicago Cartage Company (Cartage) were parties to various collective bargaining agreements. The agreement applicable to employee Arthur Davis contained a grievance procedure whereby any differences between the Union or Davis and Cartage

would be resolved by a Joint Committee consisting of three Union members and three employer representatives.[1]

When Davis began working for Cartage, in 1947, the pertinent contract provided for one week of vacation with pay after two years of continuous service. In 1951 the contract was modified to guarantee one week of vacation with pay following one year of continuous service. The contract at issue, entered into on May 1, 1974, also provided that one week of vacation with pay would be awarded following one year of continuous service.

After twenty-nine years of service, Davis filed, on January 2, 1976, a grievance with the Joint Committee alleging that he had worked twenty-nine full years but had received only twenty-eight paid vacations. Consequently, Davis sought pay for his twenty-ninth vacation. On January 30, 1976, the Committee decided in favor of Davis and awarded him, at Cartage's expense, compensation for his twenty-ninth vacation. When Cartage failed to comply with the Committee's award, Davis filed another grievance seeking enforcement of the January 30, 1976, award. Following the second grievance, the Committee, on December 2, 1977, ordered Cartage to comply with the January 30, 1976, award.

On November 17, 1977, Cartage filed suit in the district court for an injunction against a work stoppage, which issue is not involved in this appeal. The Union counter-claimed on Davis' behalf seeking enforcement of the January 30, 1976, and December 2, 1977, arbitration awards ordered by the Joint Committee. Both parties moved for summary judgment. Judge Decker, in his memorandum opinion and order, granted the Union's motion for summary judgment and denied Cartage's motion to set aside the Joint Committee's awards.

In addition to the provision for the Joint Committee mentioned earlier the agreement provided that no appeal could be taken when a majority of the Committee settled a dispute. Cartage challenges the district court's enforcement of the arbitration award, however, because it contends that the Joint Committee exceeded its powers and arrived at an erroneous decision.

In this circuit the role of a reviewing court in the present situation is confined to the narrow question of whether the arbitration award "draws its essence from the collective bargaining agreement" and whether "the arbitrator's words manifest an infidelity to this obligation." *F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local 781,* 629 F.2d 1204, 1215 (7th Cir. 1980), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981); *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int'l Union, Local 7-1, Inc.,* 548 F.2d 1288, 1293–94 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). In view of this limited role, this court has noted that

[an] arbitrator's award does "draw its essence from the collective bargaining agreement" so long as the interpretation can in some rational manner be derived from the agreement, "viewed in the light of its language, its context, and any other indicia of the parties' intentions; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." [Citations omitted]. Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court, so long as his award complies with the aforementioned standards to be applied by the reviewing court in exercising its limited function.

*F. W. Woolworth, supra,* at 629 F.2d at 1215 (quoting *Amoco,* 548 F.2d at 1294).

As a general rule, a court will not review the merits of an arbitration award arrived at by a Joint Committee. *United*

---

1. The agreement here involved had been negotiated by an association of employers which included Cartage. The three employer representatives on the Joint Committee were apparently. serving for the three-year term of the contract. None of the three were employees of Cartage, nor were any directly named to the Committee by Cartage.

*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Accordingly, the district court rejected as irrelevant most of Cartage's arguments to set aside the arbitration award because the majority of Cartage's allegations challenged the merits of the Joint Committee award. Similarly, this court will not review the merits of the January 30, 1976, and December 2, 1977, Committee awards because it sufficiently appears to us that both awards "dr[ew] their essence" from the parties' collective bargaining agreement, viewed in light of its language, the surrounding circumstances, and the law of the shop.

■ Cartage challenges the district court's enforcement of the arbitration award on grounds that the Joint Committee was arbitrary, partial, and engaged in acts of misconduct. Cartage maintains that it did not get a full and fair hearing before the Committee because the members of the Committee were biased. More particularly, Cartage pointed out that during the January 30, 1976, hearing, one of the Union representatives on the Joint Committee, Frank Wsol, refused to let a Cartage representative examine a contract purportedly between Davis and Cartage. In addition, Cartage maintains that the Union's bias against Cartage was demonstrated during the December 2, 1977, hearing, at which a Union member refused to examine a copy of Cartage's request for further consideration of Davis' claim and contemporaneously threw it on the floor.

While this court does not condone this type of behavior, it does not appear that the acts complained of would rise to the level of a material deprivation that would justify setting aside or vacating an award arrived at by a Committee with equal employer and Union representation. The Joint Committee members were selected according to the procedures set forth in the contract between Cartage and Davis. The Committee's determination to award Davis the vacation pay he requested obviously demonstrates that at least some employer representatives did not agree with Cartage's position on the vacation matter. Accordingly, in the absence of material evidence showing more persuasively than here the arbitrariness or partiality of the Joint Committee, the award by the Committee must stand.

■ Cartage also argues that the Committee improperly barred a qualified court reporter, at the request and expense of Cartage, from the grievance hearings. Cartage contends that this refusal constituted misconduct on the part of the Committee. In Cartage's view, a grievance hearing is tantamount to a quasi-judicial proceeding. Consequently, Cartage maintains that pursuant to 28 U.S.C. § 753(b)(3), it has a right to record a Joint Committee hearing.

We are unaware of authority in this circuit on the issue of whether the denial of a court reporter to transcribe a grievance proceeding constitutes misconduct. Judge Decker pointed out in the district court opinion that the absence of a court reporter does not constitute misconduct. *Berger v. Leonard Workman Co.*, 86 L.R.R.M. 2315, 2319 (S.D.N.Y.1973). In addition, although it is acknowledged that a record would be helpful to a reviewing court, the absence of a record, in itself, would not justify the vacation of an arbitration award. *Id.* at 2319.

Similarly, an analysis of decisional law in other circuits demonstrates that the prevailing view is against requiring that grievance hearings be recorded. In *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228 (2d Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), and *Feltington v. Moving Picture Machine Operators Union*, 605 F.2d 1251 (2d Cir. 1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980), the Second Circuit determined that a union member could not prevent the recording of an employee disciplinary proceeding. Cartage relies on these cases as supporting its position that grievance hearings also must be recorded on request. In *Rosario*, however, the court was careful to draw a sharp distinction between disciplinary proceedings and collective bargaining sessions or griev-

ance meetings. Specifically, because the court viewed union disciplinary proceedings as similar to formalized criminal trials, it maintained that an accurate record of the proceedings must be maintained. *Rosario, supra,* 605 F.2d at 1242. In the court's view, witnesses in disciplinary proceedings, as in criminal cases, are more likely to testify truthfully if they know the record of their testimony is subject to scrutiny by a reviewing court. *Id.; accord, Feltington, supra,* 605 F.2d at 1256.

The informal nature of collective bargaining sessions and grievance hearings, on the other hand, requires that parties engage in free and open discussion. Accordingly, these sessions are usually not recorded because the presence of a court reporter is likely to inhibit the normal give and take which negotiations, if fruitful, should have. *Rosario, supra,* 605 F.2d at 1242. *See Bartlett-Collins Co.,* 237 N.L.R.B. 770 (1978), *enforced* 639 F.2d 652 (10th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981).

The grievance hearing in the present case is not like the formalized union disciplinary proceeding in *Rosario* or *Feltington* but is analogous to a collective bargaining session. Resolution of a dispute by a Joint Committee with equal employer and union representation requires free and open discussion in an informal environment. More significantly, while grievance meetings do have some adjudicatory aspects, they do not call for the formalized procedure which should be involved in a union disciplinary hearing. In view of the significant distinctions between the nature of the two proceedings, the Union's refusal to permit the Joint Committee meeting to be recorded did not constitute misconduct.

Recent decisional law in other circuits is in accord that informal proceedings, such as collective bargaining sessions and grievance hearings, do not require that a verbatim record be kept. *See NLRB v. Bartlett-Collins Co.,* 639 F.2d 652 (10th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *Latrobe Steel Co. v. NLRB,* 630 F.2d 171 (3d Cir. 1980). The Tenth Circuit pointed out that the presence of a court reporter may formalize otherwise informal proceedings, "sapping the spontaneity and flexibility often necessary to successful negotiations." *Bartlett-Collins Co., supra,* 639 F.2d at 656. In addition, the court feared that the demand for a court reporter over objection is likely to begin the bargaining on a discordant note. *Id.*

In the Third Circuit, the presence or absence of a court reporter at collective bargaining sessions is viewed as a non-mandatory subject of bargaining. As a result, a party to a collective bargaining agreement cannot insist on the presence or absence of a court reporter as a precondition to negotiations. *Latrobe Steel Co., supra,* 630 F.2d at 179. If one of the parties to the agreement objects to recording the proceeding, the negotiations must nonetheless go on.

In view of the reasoning of the decisions in other circuits, we decline to rule that the Union's objection to Cartage's request to have the Joint Committee hearing recorded constituted misconduct. Both parties mutually agreed to resolve their disputes through an informal proceeding. We see no reason to formalize the proceedings at the expense of free and open discussion. Accordingly, the absence of a court reporter during a grievance hearing does not constitute the type of conduct that would justify the vacation of an arbitration award.

Cartage in a rambling and often disconnected style has raised other issues directed to the legal correctness of the Joint Committee award. We have considered the other contentions for reversal and find no merit therein.

We conclude that Judge Decker correctly ordered enforcement of the award of the Joint Committee made on January 30, 1976. Accordingly, the judgment is affirmed. Costs will be assessed against the appellant.

Affirmed.