James J. BOLLITIER, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS, et al, Defendants.

Civ. A. No. 85–5311.

United States District Court,
D. New Jersey.

Jan. 18, 1989.

See also 735 F.Supp. 623.

James J. Bollitier, Camden, N.J., pro se.

James Katz, Tomar, Seliger, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for defendant, Teamsters Local 676.

William T. Josem, Markowitz & Richman, Philadelphia, Pa., for defendant, Joint Council 53.

Joseph E. Santucci, Jr., Washington, D.C., for defendant, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers.

## INTRODUCTION

GERRY, Chief Judge.

Plaintiff, James J. Bollitier, brought this action pursuant to § 101(a)(5) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(5), challenging his expulsion from membership by Teamsters Local 676. Jurisdiction exists in this court under 29 U.S.C. § 412. Plaintiff's primary contention at trial was that his expulsion violated his "full and fair hearing" rights under § 101(a)(5) of the LMRDA. Plaintiff's case was tried to the court on October 5 and 6, 1988. Plaintiff represented himself at trial, with some assistance from the court. Our findings of fact and conclusions of law follow.

## FINDINGS OF FACT

### A. *Liability*

The plaintiff, James J. Bollitier, was a member of Teamsters Local 676 for over 20 years prior to his expulsion from the Local. He is a resident of Camden, New Jersey. Defendant Teamsters Local 676, whose principal place of business is Collingswood, New Jersey, is an unincorporated association and a labor organization within the meaning of Section 3(i) of the LMRDA, 29 U.S.C. § 402(i). Defendant Teamsters Local 676 is affiliated with and is a local union of defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("International Union"), whose principal office is in Washington, D.C. The International Union is an unincorporated association and a labor organization within the meaning of 29 U.S.C. § 402(i). Defendant Joint Council 53 is an unincorporated association and is an intermediate appellate body of the International Union. Local 676, as well as other Teamster local unions in the Philadelphia and Camden Metropolitan area belong to Joint Council 53. Joint Council 53 is a labor organization within the meaning of 29 U.S.C. § 402(i).

On July 3, 1984, two Local 676 officials, President John P. Greeley and Business Agent/Trustee Moses Jackson, filed internal union charges against Mr. Bollitier. These charges alleged that plaintiff had for 20 years: harassed John Greeley, Moses Jackson, and "some of the office girls"; constantly conducted himself in a very disruptive and abusive manner at the union hall; cost the Local thousands of dollars in arbitration and other fees because he was

repeatedly terminated by employers because of his belligerent attitude; failed to comply with normal hiring hall procedures; and filed, out of malice, many groundless NLRB, EEOC and civil rights charges against the Local and its officers. Defendants' Exhibit 2.

These charges were brought under Article XIX, § 6(b)(6) of the International Union's Constitution. Article XIX, § 6(b)(6) of the Constitution provides that charges may be brought against officers or members for:

Disruption of Union meetings, or assaulting or provoking assault on fellow members or officers, or failure to follow the rules of order or rulings of the presiding officer at meetings of the Local Union, or any similar conduct in, or about union premises or places used to conduct union business.

Plaintiff's Exhibit 2.

On July 20, 1984, pursuant to Article XIX, § 1 of the International Union's Constitution, the Executive Board of Local 676 held a hearing on the charges brought against the plaintiff. Because the two charging parties, John Greeley and Moses Jackson, were members of the Local Executive Board, they were barred from sitting on the Executive Board and adjudicating the merits of the charges brought against Mr. Bollitier. Further, one additional member of the Executive Board was ill, necessitating the appointment of three other individuals to the Executive Board to hear the charges against plaintiff.

Pursuant to the provisions of Article XIX, § 1(2) of the International Constitution (which the Local thought was applicable), Charles Morris, Vice President of Local 676, the principal executive officer of the Local Union at that time, due to Mr. Greeley's disqualification and Mr. Hall's illness, and the Union official who conducted the hearing, appointed Business Agents Anthony Polombi, Herman Greener and Walter Bednarczyk to the seven-member Executive Board which heard the charges against the plaintiff.

It is the established practice of Local 676 that when an appointment is required to be made to the Executive Board for the purpose of adjudicating internal union charges, the appointment be made from the Local's available business agents, selected according to seniority. Pursuant to this practice, Greener, Bednarczyk and Polombi were selected to sit on the trial board, as they were the next three most senior business agents. This appointment procedure is not inconsistent with the provisions of the International Constitution.

Mr. Greener and Mr. Bednarczyk are the brother and stepson respectively of John Greeley. The relationship between John Greeley and Walter Bednarczyk and Herman Greener is well known among members of Local 676.

The plaintiff and John Greeley have had a lengthy and stormy relationship over a period exceeding 25 years. During this period, Greeley instituted various disciplinary proceedings against the plaintiff and sought his expulsion on at least one instance prior to 1984. In turn, the plaintiff filed numerous grievances, NLRB charges, EEOC and civil rights complaints against Greeley. In addition, plaintiff wrote letters to the editors of several local newspapers accusing Greeley of malfeasance and corruption. Plaintiff also picketed the Local Union on many occasions protesting the treatment he received from Greeley and Moses Jackson. On numerous occasions, the plaintiff and Greeley had verbal sparring matches and have almost come to blows. In sum, there is a deeply held and long-abiding personal animosity between plaintiff and Greeley. Such animosity, of similar vintage, characterizes the relationship between plaintiff and Moses Jackson.

Greener and Bednarczyk were, prior to the July 1984 hearing, aware of the deep feud which existed among the plaintiff and Jackson and Greeley. Further, on sporadic occasions, the plaintiff had approached Bednarczyk and Greener separately, to ask them to intercede on plaintiff's behalf with Mr. Greeley. Bednarczyk and Greener refused to help or become involved. However, neither Greener nor Bednarczyk were personally involved in any dispute with the plaintiff prior to the July, 1984 disciplinary

hearing, nor did they bear any animosity toward the plaintiff.

Bednarczyk and Greener are long-standing employees of the Local Union. Each was laid-off as business agent, on the basis of seniority, for a time during the early 1980's. In 1984, Bednarczyk and Greener were each business agents at Local 676.

The plaintiff's work as a truck driver primarily involved construction work. Business agents for Local 676 are assigned to service various employers. During all relevant times, as a business agent, Mr. Greener was never assigned to work with any construction employers. Similarly, as a business agent, the only construction employer that Bednarczyk was assigned to was the Camden County Municipal Utility Authority (aside from a brief period in the 1970's when he may have stepped in for Moses Jackson for a short period). Construction work represents a small percentage of Local 676's operations. Neither Greener nor Bednarczyk, apparently, served as plaintiff's business agent prior to the disciplinary hearing in July of 1984.

During his hearing before the Local's Executive Board, the plaintiff had an opportunity to testify, present witnesses and introduce any available documentary evidence on his behalf. The plaintiff was accorded ample opportunity to present his case, an opportunity which he took full advantage of. Plaintiff's Exhibit 38. The hearing was not conducted in a formal, adversarial manner; there was no cross-examination. *Id.* However, the plaintiff and the charging parties were allowed to present their respective cases, to rebut adverse testimony, and to ask the Chair to direct questions to participants. The only irregularity at the hearing was the absence of a certified court reporter, which may explain the existence of gaps in the hearing transcript.

During the hearing, the plaintiff did not, on the record, object to the presence of Greener and Bednarczyk on the Executive Board. The plaintiff did vigorously contest the charges brought against him by Greeley and Jackson, contending, as he did at trial, that they essentially resulted from animosity Jackson and Greeley bore toward plaintiff because of plaintiff's long-standing complaints about the way the Local treated him and represented its members. Plaintiff denied that he was harassing anyone at the Local; instead, he argued that he was merely seeking to speak with Jackson and Greeley to remedy what he regarded as their discrimination against him. Plaintiff's basic theory was that Jackson and Greeley were trying to get rid of him because of his vigorous and repeated challenges to their leadership of the Local, his complaints about Teamster work being given to non-Teamsters, and their personal antipathy towards him.

At the end of the hearing, plaintiff was asked if he had a fair hearing. He replied, "I emphasize yes." By this, plaintiff meant that he felt he had an adequate opportunity to present his side of the story, not that he felt that Greener's and Bednarczyk's presence on the panel was fair. The record of the hearing does not indicate that Greener or Bednarczyk said anything indicating bias or prejudgment on their part.

By letter dated July 25, 1984, the Local's Executive Board wrote to the plaintiff and informed him that the Executive Board voted to expel him from membership in the Local Union. Plaintiff's Exhibit 46. On July 28, 1984, in accordance with Article XIX, § 2 of the International Union's Constitution, plaintiff filed a timely appeal of the Local Union's decision with Joint Council 53. Defendants' Exhibit 4.

On August 6, 1984, the President of the International Brotherhood of Teamsters, pursuant to Article XIX, § 9 of the International Constitution, stayed the plaintiff's expulsion until plaintiff exhausted his internal union appeals. Defendants' Exhibit 5. Plaintiff's written appeal to Joint Council 53 disputed the allegations of Jackson and Greeley, contended he was charged out of "malice" in retaliation for charges he filed against Local 676 at Joint Council 53, and complained that he was not permitted to question Jackson and Greeley (and that the Board did not do so) at the Local Union's hearing. Defendants' Exhibit 4. In

this written appeal, plaintiff did not object to the presence of Greener and Bednarczyk on the Local's hearing board. *Id.*

In a letter dated August 7, 1984, the Executive Board of Teamsters Joint Council 53 informed the plaintiff that his appeal would be heard on August 22, 1984, and that, at that date, he should bring any evidence or witnesses that he wished to present in support of his claim. On August 22, 1984, Joint Council 53 held a hearing on plaintiff's appeal. Though he did not present witnesses or documentary evidence, plaintiff did testify at great length, reiterating the arguments made in his written appeal. In addition, the plaintiff argued that his hearing before the Local Union was unfair because of the familial relationship among Greeley, Greener and Bednarczyk.

Though there is some indication that the Joint Council intended to afford the plaintiff a *de novo* hearing, the record of the Local Union's hearing was incorporated into the record before the Joint Council. Moreover, a key fact witness against the plaintiff, Magdalena D'Orio, at the Local Union hearing did not appear before the Joint Council, which therefore had no opportunity to question her or assess her credibility. Moreover, Charles Morris, presiding officer at the Local Union's hearing, testified against the plaintiff at the Joint Council hearing. The hearing before the Joint Council was similar to that conducted before the Local Union; testimony and evidence could be submitted, but there was no opportunity to examine opposing witnesses. None of the members of Joint Council 53 who heard plaintiff's appeal were members of Local 676. Nothing in the hearing transcript indicates any bias or prejudgment on the part of the Joint Council members.

On September 24, 1984, the Joint Council rendered its decision on plaintiff's appeal and affirmed his expulsion. Pursuant to Article XIX, § 2 of the International Constitution, plaintiff filed an appeal of the Joint Council's decision with the General Executive Board of the International Brotherhood of Teamsters. All parties were afforded an opportunity to submit relevant papers and evidence by December 5, 1984. Defendants' Exhibit 7. On July 9, 1985, Weldon Mathis, General Secretary–Treasurer of the International Brotherhood of Teamsters, wrote to the plaintiff and informed him that the General Executive Board of the International Brotherhood of Teamsters denied plaintiff's appeal and affirmed his expulsion.

In his letter, Mathis indicated that the International had disregarded plaintiff's repeated charges to various agencies, such as the NLRB, in considering whether plaintiff was properly expelled and relied on his "disruptive conduct within the Local Union Hall and his harass[ment] of Local Union officials" as justifying the plaintiff's expulsion under Article XIX, § 6(b)(6) of the International Constitution. Plaintiff's Exhibit 42. As to the issue of bias in the Local Union's Executive Board, Mathis wrote "[e]ven if the two substitutes were relatives [of a charging party], the fact that the Joint Council conducted a *de novo* hearing, in any event, cured the alleged defect in the hearing before the Local Union." *Id.*

### B. *Damages*

At trial, both the plaintiff and the defendants presented evidence relevant to the question of what damages, if any, plaintiff was entitled to if his expulsion was unlawful. From this evidence, we distill the following facts.

First, expulsion as a political member of Local 676 does not preclude a member who pays dues from being referred out for work from Local 676's hiring hall. Moreover, it is not the case that the Local Union operated what is known as an "exclusive hiring hall." The construction contract under which plaintiff worked, and which plaintiff contends limits employment opportunities to union members in good standing, is expressly limited by the requirements of the National Labor Relations Act. Plaintiff's Exhibit 5A at 2–5.

Second, after his expulsion was affirmed in July of 1985, plaintiff, by his own admission, never went to the Local 676 Union Hall to obtain a work referral by signing

the out of work list. Nor apparently did the plaintiff attempt to contact employers on his own after his expulsion was affirmed—partly because, plaintiff asserted, he had for nearly 30 years always obtained work through the Local's hiring hall, he did not have references, and employers were unlikely to hire him given his age.

Third, plaintiff testified that during the period 1970–1985, he was terminated from 70% of his work assignments. Almost all of these terminations, plaintiff contended, resulted from his protests over the use by these employers of non-Teamsters on jobs which the plaintiff thought belonged to Teamsters under the applicable construction contract. Plaintiff was assigned to numerous employers by the Local Union during this period, though he contends that these assignments were often cut short because he was terminated by employers acting at the instigation of John Greeley.

Fourth, in 1970, the plaintiff apparently won a settlement from Local 676 before the NLRB after the Local had discriminated against him in hiring referrals. Between 1970 and 1985, the plaintiff filed 55 Unfair Labor Practice (ULP) charges with the NLRB against employers and the Local Union; the theme of these complaints, generally, was that the Local and its officers colluded with various employers to deprive the plaintiff of work opportunities available to other members of the Local Union. Each of these ULP's was dismissed by the regional office of the NLRB, and plaintiff's appeals were denied by the NLRB.

Fifth, while plaintiff's internal appeal to the International Union was pending, he filed an Unfair Labor Practice charge with the NLRB against Local 676, Joint Council 53 and the International Union, alleging that Local 676 had discriminated against him in hiring hall referrals, and that the internal Union proceedings had adversely affected his employment opportunities. Defendants' Exhibits 8 and 9. In a letter dated May 16, 1985, Peter W. Hirsch, Regional Director of the NLRB, wrote to the plaintiff and explained the Regional Office's reasons for not issuing a complaint. Hirsch said that the plaintiff's charges, af-

ter review and investigation by the office, were devoid of merit. With respect to Local 676, Hirsch wrote:

> the evidence failed to support the allegation that the Union discriminatorily failed to refer [plaintiff] for employment during the 6–month period prior to the filing of the charge. Employees who were referred by the Union while you were on the out of work list were either requested by the employer by name or referred to jobs which you were unable to perform.

Defendants' Exhibit 10. As to the International Union and Joint Council 53, Hirsch said, "There was no evidence that internal union proceedings in which you have been involved have adversely affected your employment or opportunity for employment." *Id.*

The plaintiff filed an appeal of Hirsch's decision to the NLRB. Defendants' Exhibit 11. On June 6, 1985, the plaintiff's appeal was denied, with the General Counsel of the NLRB stating:

> [W]ith respect to your allegations that Teamsters Local 676 operates an exclusive hiring hall, the evidence showed that employers party to a contract with Local 676 are able to acquire employees in manners other than through the hiring hall. Finally, given the restrictions you claim prevent you from working on certain jobs to which the Union may refer you, it could not be said that the union's failure to refer you, if it occurred at all, was unlawfully motivated.

Defendants' Exhibit 12.

Sixth, in October of 1984, after Local 676 expelled plaintiff, the Local Union referred the plaintiff out to the Paul Lawrence Company for employment. The plaintiff was terminated by Paul Lawrence Company on October 12, 1985, because he was "disrespectful, argumentative [and] discourteous," and "[n]early every order for duties brought an argument." Defendants' Exhibit 13.

The plaintiff filed an ULP charge with the NLRB against both Paul Lawrence Company and Local 676, alleging that Local 676 breached its duty of fair representa-

tion by causing Paul Lawrence Company to discriminate against him because of his complaints as shop steward and by failing to process a grievance plaintiff filed in response to his termination, and that Paul Lawrence Company unlawfully fired him because of his activities as shop steward in protesting the Company's use of non-Teamsters on allegedly Teamster's work. Defendants' Exhibits 14 and 15. Peter Hirsch determined that the "charges lacked merit," and that the Region's investigation showed that the plaintiff was not terminated for protected activity but because of "uncooperative and insubordinate behavior," that there was no evidence that the Local caused or attempted to cause plaintiff's termination, and that the Local, in fact, attempted to persuade Paul Lawrence Company to reinstate the plaintiff. Defendants' Exhibit 16. In a letter dated March 28, 1985, Mary Shanklin, Director of the Office of Appeals of the NLRB, upheld the Regional Director's refusal to issue a complaint in the case and his dismissal of plaintiff's ULP charge. Defendants' Exhibit 18.

The plaintiff has been unemployed since his termination by the Paul Lawrence Company on October 12, 1984. The plaintiff's replacement in the Paul Lawrence Company job was Al Rogers. Mr. Rogers was employed at Paul Lawrence Company from October of 1984 until December 16, 1987. Defendants' Exhibit 19.

Seventh, plaintiff's income prior to his expulsion varied, to the extent it is discernible, quite drastically from year to year, due to the fact that he was frequently terminated by employers and because construction driving jobs of the type plaintiff was qualified to perform were relatively few in number. In 1978, six years before his expulsion, plaintiff had wages of $12,741.00. Plaintiff's Exhibit 47. In 1982, two years prior to his expulsion, plaintiff had wages of $17,590.00. Plaintiff's Exhibit 48. In 1983, plaintiff apparently earned only $106.24 in wages, and received $3,589.00 in unemployment compensation. Plaintiff's Exhibits 43 and 44. In 1984, the plaintiff apparently earned only $972.00 in wages, from the Paul Lawrence Company job. Plaintiff's Exhibit 45. No discernible pattern of wages could be gleaned from the testimony and documentary evidence introduced at trial.

Finally, plaintiff testified that he had been physically and emotionally harmed by his expulsion from the Union. However, the ulcer of which plaintiff complains arose prior to his expulsion, and the last time he was hospitalized for this condition was in August or September of 1983, approximately 11 months prior to his hearing before the Local 676 Executive Board. Nor has plaintiff visited a psychologist or psychiatrist, or other physician for treatment of his emotional condition. This failure to see a physician for treatment of an ulcer or emotional distress may very well be the result of plaintiff's financial position. Unfortunately, the record is such that we cannot, without speculation, find that the plaintiff was physically or emotionally harmed by his expulsion from the Union. Indeed, much of the harm plaintiff asserts was inflicted upon him by the Local Union flows, not from the expulsion, but, plaintiff says, from the many years he was allegedly mistreated by the Local and, in particular, its President, John P. Greeley.

## CONCLUSIONS OF LAW

■ The primary issue this court must address is whether the presence of Mr. Greener and Mr. Bednarczyk, close relatives of charging party John P. Greeley, on the Executive Board of Local 676 which expelled Mr. Bollitier from the Local violated Section 101(a)(5) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(5), which reads:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

As we have noted in prior opinions in this case, it is well settled that:

While the union member need not necessarily be provided with the full panoply of procedural safeguards found in criminal proceedings, the fundamental and traditional concepts of due process do apply to the union disciplinary hearing. An essential element of a full and fair hearing is an impartial tribunal which arrives at a decision on the basis of evidence which the accused has an opportunity to confront and rebut.

*Frye v. United Steelworkers of America,* 767 F.2d 1216, 1223 (7th Cir.1985), *quoting Tincher v. Piasecki,* 520 F.2d 851, 854 (7th Cir.1975). The United States Court of Appeals for the Third Circuit was among the first courts to recognize that an impartial hearing body is a necessary component of the full and fair hearing requirement of § 101(a)(5) of the LMRDA. *Falcone v. Dantinne,* 420 F.2d 1157, 1166 (3d Cir. 1970). Several other circuit courts of appeal recognize this basic requirement. *See, e.g., Feltington v. Moving Picture Machine Operators Union,* 605 F.2d 1251, 1257 (2d Cir.1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980); *Stein v. Mutual Clerks Guild of Massachusetts, Inc.,* 560 F.2d 486, 491 (1st Cir. 1977); *Kuebler v. Local Union 1091, Cleveland Lithographers & Photo Engravers Union Local 24-P,* 473 F.2d 359 (6th Cir.1973).

It has been urged upon us that the mere fact that Greener and Bednarczyk were close relatives of charging party John Greeley and were aware of Greeley's longstanding feud with the plaintiff does not make the Executive Board biased since Greener and Bednarczyk have not themselves been involved in any conflicts with the plaintiff. "Charges that bias undermined the fairness of a disciplinary proceeding must be supported by specific factual allegations from which the operation of bias can be inferred." *Frye,* 767 F.2d at 1225.

This court believes that the plaintiff has, at trial, established facts demonstrating that he was deprived of an impartial hearing tribunal. The disciplinary hearing plaintiff was subjected to became, in fact, a contest of credibility. The plaintiff contended that he had done nothing wrong and was merely attempting to communicate with union officers, Greeley and Jackson, who were mistreating him and failing to respond to his attempts to communicate with them. The charging parties, meanwhile, argued that they had fairly represented the plaintiff and, despite this, plaintiff engaged in a pattern of disruptive and harassing behavior toward them and other union employees. Which version to believe was up to the Local's Executive Board.

In the ordinary case involving a charging party who is an officer of the Local, one might be inclined to think that his fellow officers, who sit on the Executive Board, might give his testimony more credence because of their working relationship with him. However, it is, of course, not the case that the tribunal would therefore be necessarily inadequate for purposes of the LMRDA. Here, however, we have a more distasteful situation.

Two members of the Local hearing board which determined plaintiff's fate were not simply business agents for the Local under President John P. Greeley, they were his stepson and brother. When plaintiff pled his case to the Local, he was looking into the eyes of his adversary's close family members. When Mr. Greeley, on the other hand, literally acting as a prosecutor, rose to speak, he was preaching to an assemblage of his trusted disciples, an assemblage which included his own son and brother.

■ We do not believe that in such a situation a union member's fundamental right to a hearing before an impartial tribunal is satisfied. Perhaps Mr. Greener and Mr. Bednarczyk are immune to universally observed deficiencies in their fellowmen and were able to put aside family and professional sentiment, advantage and loyalties in assessing the charges against the plaintiff. Perhaps Mr. Greener and Mr. Bednarczyk are more judicious and detached than the average federal judge, who would be precluded from trying a case in which the prosecutor was his father or brother. *See* 28 U.S.C. § 455(b)(5).

While we do not preclude the possibility that this is the case here, we do not believe the determination of whether Mr. Bollitier was afforded a "full and fair hearing" turns on our speculation about Mr. Bednarczyk's and Mr. Greener's abilities to shed the rather unavoidably natural tendency to be biased toward family members in a dispute involving issues of truthfulness and integrity of family members. Rather, we think that Mr. Bollitier's LMRDA rights were violated when the Local Executive Board which adjudicated his fate was partially comprised of the family of his accusers, since we infer bias from Greeley's relationship to Greener and Bednarczyk.

This conclusion is strengthened by the emotional intensity and duration of the feud between Greeley and the plaintiff, a feud Greener and Bednarczyk were well aware of, as well as the refusal of Bednarczyk and Greener to intercede on plaintiff's behalf with Greeley. The fact that Greener and Bednarczyk may not have actually formed a judgment about the charges against the plaintiff prior to the hearing does not change our conclusion. *Goodman v. Laborers' International Union of North America*, 742 F.2d 780, 784 (3d Cir. 1984) ("We have never held that prejudgment, or an actual expression of an opinion on the merits of the trial by a member of a tribunal before the trial, is the only grounds for finding that a tribunal was so biased as to constitute a violation of the disciplined party's rights under the LMRDA").

■ Given our conclusion, we necessarily find that Local 676 violated § 101(a)(5) of the LMRDA. The plaintiff, however, has also sued Joint Council 53 and the International Union. To be liable for their affirmance of plaintiff's expulsion under a theory of ratification, they must have acted in bad faith or be guilty of fraud, *International Brotherhood of Electrical Workers v. NLRB*, 487 F.2d 1113, 1129 (D.C.Cir. 1972), or have acted with full knowledge that Local 676 had unlawfully disciplined the plaintiff. *Rodonich v. House Wreckers' Union Local 95*, 817 F.2d 967, 973 (2d

Cir.1987). Both Joint Council 53 and the International Union were aware of Greener and Bednarczyk's relationship to Greeley and their presence on the Executive Board which expelled the plaintiff. However, the Joint Council apparently attempted to minimize this problem by conducting what it believed to be a *"de novo"* hearing. The International Union noted that the Local's hearing panel was perhaps improperly constituted in its decision on plaintiff's appeal but relied on the Joint Council's *"de novo"* hearing as curative. There is no evidence that the Joint Council or the International Union acted in bad faith in affirming plaintiff's expulsion or with knowledge that his expulsion was necessarily tainted by a partial hearing board. We find, therefore, that neither is liable to the plaintiff.

■ Turning to the question of damages, we note that 29 U.S.C. § 412 only permits recovery of damages which directly and proximately result from any alleged violation of the LMRDA. *McGraw v. United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry*, 341 F.2d 705, 710 (6th Cir.1965). For a violation of § 101 LMRDA rights, recovery may include, in an appropriate case, damages for stigmatization, loss of earnings, and physical and emotional distress. Punitive damages are potentially available, as are attorney's fees. Indeed, § 412 expressly authorizes the federal courts the power to grant appropriate relief and does not specify what remedies are available since Congress wished to avoid the "danger that those remedies not listed might [thereby] be proscribed with the result that the courts would be fettered in their efforts to grant relief according to the necessities of the case." *Hall v. Cole*, 412 U.S. 1, 11, 93 S.Ct. 1943, 1949, 36 L.Ed.2d 702 (1973), *quoting Gartner v. Soloner*, 384 F.2d 348, 353 (3d Cir.1967).

Before awarding damages, however, a trier of fact must first find that the plaintiff's injuries were causally connected to the defendant's wrongdoing. *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1245 (2d Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853,

64 L.Ed.2d 273 (1980). Here, plaintiff Bollitier seeks to recover wages he contends he lost as a result of his expulsion, damages for emotional and physical distress caused by the expulsion, punitive damages, and also reinstatement as a full member of Local 676.[1]

We deal with the lost wage claim first. The plaintiff asserts that he lost wage opportunities because he was no longer eligible for job referrals after his expulsion from the Local Union. After considering the evidence, however, we are unable to find a causal link between plaintiff's expulsion as a political member of Local 676 and any decrease in his earnings. We are not persuaded that Local 676 would not have referred the plaintiff out for work if he had signed the Local's out of work list. Indeed, the Local's construction contract is limited by the National Labor Relations Act, Sections 8(b)(1)(A) and (b)(2) of which would be violated if Local 676 discriminated against the plaintiff in job referrals because he was expelled from the union. See generally R. Gorman, Basic Labor Law 639–646 (1976). No evidence suggests that the Local Union has unlawfully discriminated against the plaintiff after his expulsion, indeed the NLRB found against the plaintiff on this very point.[2] In fact, the plaintiff was referred out to the Paul Lawrence Company after his expulsion hearing before the Local (but prior to the International's affirmance of his expulsion) but was terminated for improper conduct. The record indicates that the plaintiff, had he not been fired, could have worked at Paul Lawrence Company from October 1984 until December of 1987, since his replacement did.

After the Paul Lawrence Company firing, plaintiff never asked to be placed on the Local's out of work list. He never went to the Local's hiring hall to seek a referral. Nor did he attempt to contact employers directly, even though the Local does not operate an exclusive hiring hall. Given these facts, we cannot conclude that the plaintiff's expulsion, rather than his own failure to seek a referral, caused him to lose job opportunities. Further, plaintiff failed to demonstrate that his income subsequent to expulsion was less than it was prior to his expulsion. By his own testimony, plaintiff was fired by successive employers from 70% of his work assignments for protesting what he saw as breaches of the Local's construction contract. The sparse evidence we have on plaintiff's income indicates that plaintiff's earnings varied greatly from year to year, and in 1983, prior to his expulsion, he earned very little in the way of wages. Even if we found that the plaintiff was economically damaged by expulsion, which we do not, this record is not minimally sufficient to assess damages without speculation. In sum, we

---

**1.** The defendants have consistently argued that since there was sufficient evidence to sustain the plaintiff's expulsion even if the Executive Board was biased, the procedural defect was not the cause of plaintiff's expulsion, and therefore plaintiff is entitled to only those damages resulting from the procedural defect. See Carey v. Piphus, 435 U.S. 247, 260, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). Here, we have no doubt that there was sufficient evidence, in the form of witness testimony, to sustain plaintiff's expulsion. The nature of any evidence, however, is such that it only enjoys probative force if it is accepted as substantially true by the tribunal. As indicated, we believe the plaintiff's disciplinary hearing was a credibility contest, one in which the outcome could very well have hinged on who was sitting as the trier of fact. In short, the defendants have not, to this court's satisfaction, proven that plaintiff would have been expelled by an impartial panel.

**2.** Given our view that plaintiff has not shown that he was unlawfully discriminated against,

we need not consider the preclusive effect of the NLRB's decision on plaintiff's ULP charge of referral discrimination during the period prior to the affirmance of his expulsion. See Frye, 767 F.2d 1216. Nor need we consider the defendants' arguments that hiring hall practices are beyond the purview of this court. We do note that though plaintiff has raised the issue of discrimination in job referrals, plaintiff's primary claim is that his expulsion was unlawful under § 101(a)(5) of the LMRDA, and that he was thereby damaged. Such a claim is within our jurisdiction, International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), as it is distinguishable from cases where it is argued that referral discrimination directly implicates the "otherwise disciplined" language of § 101(a)(5). See e.g., Hackenburg v. International Brotherhood of Boilermakers, 694 F.2d 1237 (10th Cir. 1982).

do not find that plaintiff has borne his burden of proving by a preponderance of the credible evidence his entitlement to damages for lost earnings.

■ Next, we turn to the issue of whether plaintiff is entitled to damages for emotional distress. After considering the evidence, we decline to award the plaintiff emotional distress damages. Though plaintiff may recover such damages, he failed to prove that he was actually or measurably injured by his expulsion, or to demonstrate by competent testimony a physical manifestation of emotional distress. *Rodonich*, 817 F.2d 967, 977–978 (2d Cir.1987); *Bloom v. International Brotherhood of Teamsters*, 752 F.2d 1312, 1315 (9th Cir.1984); *International Brotherhood of Boilermakers v. Rafferty*, 348 F.2d 307, 315 (9th Cir.1965). Indeed, the ulcer of which plaintiff complained at trial occurred prior to his expulsion.

■ Plaintiff has also asserted a claim for punitive damages. Several circuit courts of appeal have held that punitive damages are available under § 102 of the LMRDA, upon a showing of malice or reckless or wanton indifference to a union member's rights. *Schmid v. United Brotherhood of Carpenters & Joiners*, 827 F.2d 384, 386 (8th Cir.1987); *Quinn v. Di-Giulian*, 739 F.2d 637, 651 (D.C.Cir.1984); *Bise v. International Brotherhood of Electrical Workers*, 618 F.2d 1299, 1305 (9th Cir.1979). Our view of the evidence is that the Local did not intentionally place Greener and Bednarczyk on the Executive Board because they were close relatives of John Greeley. Rather, they were placed there because of their seniority. This, of course, does not obviate the Local's liability for disciplining the plaintiff without according him a hearing before an unbiased panel; it does cause us to refrain from assessing punitive damages. The Local Union should have looked down the seniority ladder when it realized that its seniority system had resulted in a situation where Greener and Bednarczyk would sit on a case where their close relative was a charging party. But viewing all of the evidence there is nothing to persuade us that its failure to do so was malicious or the result of an intention to harm the plaintiff.

■ Next, we reach the issue of reinstatement. Because the plaintiff was expelled by a biased tribunal, he is entitled to reinstatement as a member of Local 676 "subject to expulsion only after a full and fair hearing before an unbiased tribunal as mandated by § 101(a)(5)(c) of the LMRDA." *Feltington v. Moving Picture Machine Operators*, 605 F.2d 1251, 1257 (2d Cir.1979).

■ Finally, we reach plaintiff's claim for attorney's fees. We find that plaintiff is entitled to an award of reasonable attorney's fees. Over the course of several years, plaintiff has pursued this action, first with counsel and then as a pro se litigant. This litigation has provided a common benefit to the members of Local 676, *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), since it will increase the Local's sensitivity to the full and fair hearing rights of its members. Doubtless the Local will more carefully select its hearing boards in the future so as to select members free from partiality or bias. Within 30 days, plaintiff should submit a *sworn* fee petition, copying Local 676 counsel, setting forth the number of hours the plaintiff and his original attorney Alan Baybick worked on the case, the tasks on which these hours were expended, the number of these hours for which the plaintiff and Mr. Baybick feel they are entitled to compensation, the hourly rate at which they believe compensation should be computed, and a memorandum of law specifying the legal principles which should guide us in making our fee award. After we receive plaintiff's submission, the defendants shall have 15 days to file a response. An appropriate order will be entered.

### ORDER

This matter having been tried to the court, and the court having considered the testimony, exhibits and submissions of the parties;

It is, this 18th day of January, 1989, hereby ORDERED that judgment be en-

tered against defendant Teamsters Local 676 and in favor of plaintiff on his claim that the defendant violated rights secured to him by 29 U.S.C. § 411(a)(5), with relief limited to reinstatement subject to expulsion only after a full and fair hearing consistent with the requirements of the Labor–Management Reporting and Disclosure Act, and attorney's fees incurred in this litigation. Plaintiff shall submit an affidavit itemizing said fees for the court's approval; and

It is FURTHER ORDERED that judgment be entered against plaintiff and in favor of defendants Teamsters Joint Council 53 and the International Brotherhood of Teamsters on plaintiff's claim that the defendants violated 29 U.S.C. § 411(a)(5), without costs; and

It is FURTHER ORDERED that judgment be entered against plaintiff and in favor of all defendants on any remaining claims contained in plaintiff's complaint, without costs.