**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL NO. 18, Plaintiff,**

v.

**HOUSEHOLD UTILITIES, INC., Defendant.**

**Civ. No. 85–C–868.**

United States District Court, E.D. Wisconsin.

June 20, 1986.

Matthew R. Robbins, Christian L. Raisner, Milwaukee, Wis., for plaintiff.

Thomas W. Mackenzie, William E. McCardell, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiff Sheet Metal Workers International Association, Local No. 18 ("Local 18"), brings this suit for enforcement of an arbitration award against defendant Household Utilities, Inc., ("HUI"). This Court has subject matter jurisdiction under 29 U.S.C. § 185, 9 U.S.C. § 1, et seq., and 28 U.S.C. § 1337. On February 27, 1986, plaintiff moved for summary judgment and on March 31, 1986, defendant moved for summary judgment. The motions have been fully briefed and are ready for decision.

### FACTS

From June 1, 1983 to May 31, 1985, Local 18 and HUI were parties to a collective bargaining agreement which contained provisions for a three-stage, binding dispute resolution system. If the parties were unable to resolve grievances themselves, they applied to a body called the Local Joint Adjustment Board ("Local Board"), which was composed of an equal number of representatives of Local 18 and the local employers' association to which HUI belongs. Failing resolution at this level the dispute went to an appellate level entity called a Panel, which was chosen by the Sheet Metalworkers' International Association and by the Sheet Metal and Air Conditioning Contractors National Association, HUI's national employers' association. If, in turn, the Panel deadlocked, the dispute was resolved at the third and final level of the system by the National Joint Adjustment Board ("NJAB"), which is a body established for this purpose by the international union and the national employers' association. The collective bargaining agreement granted the Local Board, the Panel and the NJAB power to "render such decisions and grant such relief to either party as they deem necessary and proper," and provided that the unanimous decision of the NJAB "shall be final and binding upon the parties."

Since 1968 HUI has been in the metal fabricating business at its current plant in Kiel, Wisconsin. The firm's operations consist of a construction division which employs exclusively unionized labor, and a production, or fabrication, division which does not. The construction division is located in a separate area of the factory, uses only its own equipment and is supervised separately from the production division. Occasionally unionized workers from the construction division would be assigned to do welding work in the production division. The parties disagree about the extent to which this took place.

As early as 1980 representatives of Local 18 spoke to HUI executives about organizing the labor in the production division of the plant.

The dispute giving rise to this lawsuit began on April 21, 1984, when Local 18 business representative Jerry Voechting brought to the attention of Ed Krueger, HUI's production supervisor, two grievances regarding work in the production section: (1) a non-union employee was programming a computerized cutting machine, and (2) other non-union employees were performing fabrication welding work. Voechting claimed that both jobs were cov-

ered by the collective bargaining agreement.

Voechting and Krueger met again on May 25 and June 7, 1984, but were unable to resolve either grievance. The grievances were referred to the Local Board which held an evidentiary hearing at which both sides presented witnesses. On August 14, 1984, the Local Board decided in favor of HUI as to the computer programming work but deadlocked as to the welding work in the production division. The Local Board described the second grievance as follows:

Charges consisting of non-bargaining unit employees doing historically bargaining unit work, welding of fabricated products.

Local 18 appealed the deadlocked welding work grievance to the Panel and presented additional evidence. The evidence tended to show that welding work was historically done by union members and that a union member who had done such work was laid off after he had trained to do production welding a junior non-union employee, who was still employed. Local 18 requested damages of $25,852 for lost hourly wages to its member and reassignment of the work in question to the union. The Panel, like the Local Board before it, deadlocked on the issue.

Local 18 next took their appeal to the NJAB. Local 18's application to the NJAB states the facts pertinent to the dispute as follows:

Local # 18 contends that a Mr. Leiter and another employee, not a member of Sheet Metal Workers' Local # 18 are doing and have been doing the welding procedures in the production area of the shop. Business Representative Jerry Voechting contends that this work has been done historically by members of Sheet Metal Workers' Local # 18.

After a further hearing at which both sides were represented, the NJAB decided on February 8, 1985, that the disputed work was covered by the collective bargaining agreement, with which it ordered HUI to comply unless the parties could agree otherwise within thirty days. The NJAB's decision reads in relevant part as follows:

The employer asserts that the work on metal components involved in the grievance is not included in the scope of work covered by the agreement and the union argues that it is.

The Board finds that the work of the nature described is covered by Article I of the local agreement. The terms of the contract must be complied with unless otherwise provided for by adoption of a production contract.

The NJAB decided to award no damages.

On March 1, 1985, HUI filed a charge with the National Labor Relations Board ("NLRB") alleging that Local 18 had violated the National Labor Relations Act ("NLRA") by "restraining and coercing the production employees" of HUI from exercising their rights under the NLRA. HUI believed that the negotiation of a collective bargaining agreement and its application to their non-union production employees would violate §§ 8(a)(3) and 8(b)(2) of the NLRA. In late April 1985 the NLRB advised HUI that it would not pursue this charge as the NLRB did not believe that Local 18 was attempting to unlawfully impose a contract on non-union employees.

Since the NJAB decision HUI has neither reassigned the production welding work to Local 18 welders nor required its non-union production welders to join the union.

The collective bargaining agreement between Local 18 and HUI expired by its terms on May 31, 1985. The parties attempted but failed to negotiate a successor agreement. Those negotiations terminated on July 10, 1985.

## LEGAL ANALYSIS

 It is a principle long and well established that a federal court must resolutely defer to the decision of an arbitrator chosen by parties to settle their private disputes.

Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a

mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. *Burchell v. Marsh,* 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1855) (quoted in *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 183 (1985)). A reviewing court should not interfere with an arbitrator's award unless the arbitrator has exceeded the powers delegated to him by the parties, *Ethyl,* 768 F.2d at 184, or has manifestly disregarded the law, *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *Jones Dairy Farm v. Local No. P–1236,* 755 F.2d 583, 586 (7th Cir.1985) (Posner dissenting). Such deference is due not only to private adjudicators designated "arbitrators" but to any chosen instrument for the definitive settlement of grievances under a collective bargaining agreement. *Truck Drivers Union v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963).

A. *Enforceability of the NJAB Award*

■ HUI argues that the NJAB's award is unenforceable because it disregards applicable federal labor law. HUI's argument is as follows: Article V of the contract between Local 18 and HUI provides that

> [t]he Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment...

The NJAB interpreted Article I to cover the production welding work in dispute and thus implicitly, according to HUI, required the non-union welders to become Local 18 members pursuant to the requirements of Article V. Sections 8(b)(2) and 8(a)(3) of the NLRA, however, make it an unfair labor practice for either an employer or a labor organization to require union membership as a condition of employment before an employee's thirtieth day of employment. Though § 8(f) of the NLRA creates an exception for the building and construction industry, allowing an 8–day requirement similar to that found in Article V of the agreement between Local 18 and HUI, the exception applies by its terms only to workers employed in the construction industry. Since HUI's production workers are not employed in the construction industry, federal law precludes the application to them of a provision such as Article V of HUI's contract with Local 18.

The Court cannot accept HUI's contention that compliance with the NJAB's award would cause the firm to violate § 8 of the NLRA. The award requires that, pursuant to the collective bargaining agreement, only welders provided by Local 18 are to be assigned to production welding work. There is, first of all, no evidence that Local 18 has or will require compliance with the agreement's 8–day rule. If it were to do so, Local 18 may well be liable under § 8(b)(2) for any resulting violation of the rights of such workers. Even were Local 18 to require such compliance, HUI can avoid violating § 8(a)(3) by reassigning or laying off non-union employees engaged in such work. Though this would be a harsh result of the NJAB's award, this Court may not overturn the award for that reason.

B. *Scope of the NJAB Award*

Local 18 argues that the plain meaning of the language of the NJAB decision covers not only the production welding work at the HUI plant but extends the union's jurisdiction over the entire production division. The Court can find little basis for such a claim either in the language of the NJAB's decision or in the affidavits and exhibits submitted in connection with the cross motions for summary judgment. However, this issue is not before the Court. Local 18's complaint seeks only enforcement of the NJAB award, damages for HUI's failure to comply with the award, interest and attorney's fees. The Court has not found it necessary to construe the

award as to scope in order to decide that the award is enforceable nor, as indicated below, is such construction necessary to decide Local 18's claims for damages and attorney's fees.

## C. *Damages*

■ HUI concedes that, given the Court's finding as to the NJAB award's enforceability, HUI is liable for damages. The parties agree that damages began to accrue on March 8, 1985. They dispute the time at which damages ceased to accrue.

Local 18 claims that, in virtue of Article XIII, Section I, of the collective bargaining agreement, damages accrued until July 10, 1985, when the parties broke off negotiations on a new contract. Article XIII, Section I, reads in relevant part as follows:

> [The agreement s]hall continue in force from year to year thereafter unless written notice of reopening [of negotiations on a new agreement] is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party...

Because the NJAB award construed the contract to apply to production welding work, HUI's subsequent use of non-union labor for production welding constituted a breach as long as the contract continued in force and effect, that is, until the termination of negotiations between Local 18 and HUI.

HUI, while not disputing Local 18's reading of this provision, argues that Local 18 should be entitled to damages only through May 31, 1985, when the collective bargaining agreement expired because the union subsequently bargained in bad faith. HUI's allegation of bad faith by Local 18 stems from the union's assertion during negotiations that the NJAB decision recognized the union's jurisdiction not only over production welding but over all the work in the firm's production division. HUI believes that Local 18's alleged bad faith in this regard should preclude a damages award for any time following the expiration of the collective bargaining agreement.

The Court finds that damages accrued until termination of negotiations between HUI and Local 18 on July 10, 1985. Local 18 was free to negotiate for HUI recognition of the union's claimed jurisdiction over the work in HUI's production division. The jurisdictional claim predated the dispute over production welding work. The fact that Local 18 sought to bolster its claim by construing the language of the NJAB decision to support it does not amount to such bad faith as to abrogate an unambiguous provision of a valid contract.

HUI also claims that any damage award should be in favor of the non-union welders it employed in its production division at a level of compensation below what HUI would have paid to welders supplied by Local 18 for the same work. Damages on this theory would be limited to the difference between the two compensation levels. This, HUI argues, would prevent a "windfall" to Local 18.

The Court cannot accept HUI's theory on damages for the simple reason that it does not measure the damage to Local 18 caused by HUI's failure to comply with the NJAB's award. Local 18 had the right to supply welders to perform all the production welding performed by non-union welders from March 8, 1985 to July 10, 1985. The welders so supplied by the union would have had a right to compensation at a level consistent with the provisions of the collective bargaining agreement. These welders, represented by Local 18, and the union itself are the injured parties and they should receive their damages in full.

Local 18 is entitled, therefore, to damages from HUI for its non-compliance with the NJAB award from March 8, 1985, the effective date thereof, to July 10, 1985, the date on which negotiations toward a new collective bargaining agreement terminat-

ed. Damages shall be measured by the number of hours for which HUI has paid non-union labor to perform production welding during the period indicated, times the union hourly rate. Payment shall be made to Local 18.

However, because the parties have not provided the Court with sufficient evidence of damages, it is not possible to enter judgment for a specific dollar figure. Therefore, absent a stipulation from the parties as to the union hourly rate or rates for production welding during the relevant period, the Court will schedule an evidentiary hearing on this, the sole remaining issue in this case.

### D. *Attorney's Fees*

The Court will deny the respective motions for attorney's fees. While this litigation appears to have been unnecessary, the Court is not able to lay blame squarely on one side or the other for the parties' failure to resolve through negotiation their differences following the NJAB decision.

### ORDER

IT IS THEREFORE ORDERED that the motion for summary judgment of plaintiff Sheet Metal Workers International Association, Local No. 18, is granted with respect to enforcement of the award of the National Joint Adjustment Board and with respect to the liability of defendant Household Utilities, Inc., for damages for lost hours of production welding work from March 8, 1985 to July 10, 1985, but denied with respect to attorney's fees; the motion for summary judgment of defendant Household Utilities, Inc., is denied.

IT IS FURTHER ORDERED that, absent a joint stipulation by the parties concerning the hourly wage rates for production welding work by welders supplied by plaintiff, the parties shall appear before the Court on a date and at a time to be determined by the Deputy Clerk for an evidentiary hearing to determine such rates.