**HEAT AND FROST INSULATORS, LOCAL NO. 19, Plaintiff,**

v.

**INSULATION SYSTEMS, INC., Defendant.**

No. 03–C–1018.

United States District Court, E.D. Wisconsin.

Nov. 16, 2004.

Matthew R. Robbins, Previant Goldberg Uelmen Gratz, Miller & Brueggeman SC, Milwaukee, WI, for Plaintiff.

Daniel J. Finerty & Kevin J. Kinney, Krukowski & Costello SC, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

RANDA, Chief Judge.

The Plaintiff, Heat and Frost Insulators Local No. 19 ("Local 19"), in the above-captioned action, filed its Complaint in this Court on October 17, 2003, seeking to enforce an arbitration award against the Defendant, Insulation Systems, Inc. ("Insulation Systems"). Local 19's Motion for Summary Judgment is currently before the Court and, for the following reasons, is hereby granted.

## I. STANDARD

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir.2004). The non-movant may not rest on the pleadings,

but should affirmatively set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

■ In the present action, Insulation Systems has not provided any response to Local 19's motion. Local Civil Rule 56.2(e) of the United States District Court for the Eastern District of Wisconsin states that, when deciding a motion for summary judgment, "the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2; *see also Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir.2002) ("[w]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). Insulation Systems has provided neither a response to Local 19's motion nor its own proposed findings of fact. Therefore, insofar as Local 19 has complied with applicable rules related to setting forth proposed findings of fact, the Court will accept those proffered facts as uncontested.

## II. FACTS

Local 19 is a party to a collective bargaining agreement (the "Working Agreement") with the Wisconsin Insulation Contractors Association. As a signatory to the Working Agreement, Insulation Systems is bound by its provisions. (Vangsness Aff. at 1, ¶ 2.)

The Working Agreement provides that signatory employers may employ "luggers,"[1] but only to perform unskilled work

---

1. The term "lugger" is not defined by the parties and is not defined in the resources at

that does not require the training of a union journeyman or apprentice. (Working Agreement Between Heat & Frost Insulators Local 19 and Wisconsin Insulation Contractors Ass'n at 8–9, Art. VII [hereinafter "Working Agreement"].)[2] Except for such unskilled work, the Working Agreement prohibits employers from using luggers to perform labor designated for bargaining unit workers. (Id.; Vangsness Aff. at 2, ¶ 3.)

Pursuant to the Working Agreement, a Joint Trade Board ("the Board") hears grievances related to violations of the Working Agreement. (Working Agreement Art. XIX at 20–21.)[3] The Board consists of three members appointed by Local 19 and three members appointed by the Wisconsin Insulation Contractors Association. (Id.) The Board, under the Working Agreement, has authority to decide all questions related to violations of the Agreement. (Id.) Additionally, the Board may impose fines and penalties and decide on the charitable disposition of all monies so collected. (Id.) The Board renders decisions by a majority vote of its members and, in the event of a voting tie, may refer the matter to a neutral arbitrator. (Working Agreement Art. XX at 21; Vangsness Aff. at 2, ¶ 5.)

By letter dated June 21, 2002,[4] Gerald Vangsness ("Vangsness"), the business manager for Local 19 as well as the Board's Secretary, notified Insulation Systems of a pending grievance related to Insulation Systems' alleged use of a lugger to perform labor reserved for bargaining unit workers. (Vangsness Aff. at 2, ¶¶ 4, 7; Ho Aff. Ex. B.) On July 16, 2002, the Board convened and found Insulation Systems guilty of violating the Working Agreement. (Vangsness Aff. at 3, ¶ 8 & Ex. A.) As a penalty for the infraction, the Board imposed a fine of $5,000.00 which was to be held in abeyance but would become immediately collectable should Insulation Systems commit a similar violation in the future. (Id.)

On March 4, 2003, Vangsness sent a letter to Randy Meyer, the President of Insulation Systems, notifying him of another grievance filed against his company involving the use of a lugger. (Vangsness Aff. at 3, ¶ 9 & Ex. B.) After a hearing on the matter on March 24, 2003, the Joint Trade Board unanimously found Insulation Systems guilty of using luggers to perform journeyman and apprentice work. (Vangsness Aff. at 3, ¶ 11; Ho Aff. Exs. C, D.) The Board, in two rulings both dated March 24, 2003, imposed a $25,000.00 fine and ordered payment of the previous

---

the Court's disposal. The Court, based on the parties' use of the term, understands a "lugger" to be a laborer who performs work that is rudimentary in nature, such as loading or moving materials, and which does not require a great deal of expertise or technical knowledge.

2. A copy of the Working Agreement is attached to the Affidavit of Yingtao Ho as Exhibit A.

3. Local 19's proposed findings of fact erroneously identify Article 20 as the provision establishing the Board. (See Pl.'s Proposed Findings Fact Supp. Mot. Summ J. at 2, ¶ 4.)

4. Both Vangsness' Affidavit and Local 19's proposed findings of fact identify July 1, 2002 as the date on which notice was given to Insulation Systems' President Randy Meyer of the pending grievance. The Court did not receive a copy of any missive issued on that date and, therefore, is unable to determine the nature of the "notice" given to Insulation Systems. Though the July 1st date appears in the aforementioned documents, the Court has used the date that appears on the letter included as Exhibit B in the Affidavit of Yingtao Ho. Exhibit B seems to be a notice letter related to Insulation Systems' first alleged violation of the Working Agreement. The Court notes that Exhibit B is not signed.

$5,000.00 fine held in abeyance by its July 16, 2002 ruling. (Vangsness Aff. at 3–4, ¶¶ 12, 13; Ho. Aff. Exs. C, D.)[5] The $5,000.00 fine was to be paid within 30 days of the ruling while the $25,000.00 fine was to be paid within 90 days.[6] (Ho Aff. Exs. C, D.)

The Board calculated the $25,000.00 award by multiplying the difference between the wages of a first-year apprentice and the benefits earned by a journeyman worker with the number of hours worked by the lugger. This product was then reduced by approximately $5,000.00 in a show of "good faith." (Ho Aff. Ex. D.) Furthermore, the Board ruled that Insulation Systems would be liable for any attorneys' fees incurred by Local 19 as a result of trying to collect the imposed fines. (*Id.*; Vangsness Aff. at 3–4, ¶ 12.)

On April 4, 2003, Insulation Systems requested reconsideration of the Board's awards. (Vangsness Aff. at 4, ¶ 15.) The Board denied this request in a letter dated May 8, 2003. (*Id.*) On July 4, 2003, Insulation Systems sent a letter to Vangsness requesting arbitration. (Vangsness Aff. at 4, ¶ 16.) Vangsness's response notified Insulation Systems that arbitration was not appropriate in the present instance because the Board had reached a unanimous decision and the Working Agreement did not allow for the arbitration of a resolved grievance. (*Id.*)

To date, Insulation Systems has not paid the fines imposed by the Board. As a result, Local 19 filed its complaint in this Court on October 17, 2003. Specifically, Local 19 seeks a judgment which (1) confirms and enforces the arbitration awards of the Board; (2) orders Insulation Systems to comply with the arbitration awards of the Board; and (3) orders Insulation Systems to pay the reasonable attorneys' fees and costs incurred by Local 19 in this action. (Compl. at 4.) Local 19 subsequently moved for summary judgment on June 2, 2004. Insulation Systems moved to stay the summary judgment motion, but, by Order of this Court dated July 16, 2004, that motion was denied. As a result, Insulation Systems has not submitted a response to Local 19's motion.

### III. ANALYSIS

This Court exercises jurisdiction over the present action pursuant to Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185. Deference will be given not only to "arbitrators," but to any instrument chosen by the parties for the settlement of grievances under a collective bargaining agreement. *Sheet Metal Workers Int'l Assoc., Local 18 v. Household Utils., Inc.*, 638 F.Supp. 177, 180 (E.D.Wis.1986). Accordingly, the Court recognizes its ability to enforce the awards

---

**5.** Vangsness states that Exhibit C of his affidavit is a copy of the Board's award against Insulation Systems for $25,000.00. (Vangsness Aff. at 3–4, ¶ 12.) Exhibit C, however, is entitled "Heat & Frost Insulators Joint Trade Board Meeting Minutes 3–24–03." This document certainly does not appear to be the actual document containing the official ruling of the Board. Such rulings may be found in the Ho Affidavit as Exhibits C & D. Those exhibits, however, are a source of potential confusion themselves. Both Exhibits are unsigned and, further, it appears as though the Ho Affidavit transposes the descriptions of the Exhibits. Contrary to the claims of the affida-

vit (see Ho Aff. at 2, ¶¶ 4, 5), Paragraph 5 of the Ho Affidavit describes Exhibit C and Paragraph 4 describes Exhibit D.

**6.** Vangsness states that both fines were payable within 90 days of the Board's award. (Vangsness Aff. at 4, ¶ 13.) This claim, however, is contrary to the plain wording of the Board's ruling. (*See* Ho Aff. Ex. C.) The Court assumes that this is another error in Local 19's filings and further assumes that the Board's rulings provide the correct periods of time in which the levied fines were payable.

of joint committees composed of union and employer representatives. The National Labor Relations Board considers the decisions of such "joint committees" to be tantamount to arbitration awards. *See Denver–Chicago Trucking Co.*, 132 NLRB 1416, 1421 (1961). The United States Supreme Court has affirmed this understanding. *See Local Union 89 v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

 Local 19 correctly states that Insulation Systems is barred by Wisconsin's three-month limitations period from challenging the Board's decision. Though Section 301 of the Labor Management Relations Act does not specify a limitations period for challenges to arbitral awards, courts in this Circuit adopt the statute of limitations of the forum state in a comparable action. *See Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir.1989). In Wisconsin, this period is three months. *Id.*; Wis. Stat. § 788.13.[7] The Board issued its last ruling on March 24, 2003 and denied Insulation Systems' request for reconsideration in a letter dated May 8, 2003. The applicable three-month period for challenging the Board's decision has clearly passed.

 Since Insulation Systems is time-barred from attempting to vacate, modify or correct the awards, the Court now proceeds to determine whether or not confirmation is warranted. It is not this Court's role to review the soundness of the Board's decisions, but rather, to assess whether the Board has exceeded the powers delegated to it by the parties and based its rulings on some body of thought, feeling, policy or law outside of the bargaining agreement. *See Ethyl Corp. v. United*

*Steelworkers of America*, 768 F.2d 180, 184 (7th Cir.1985). In other words, a court should not substitute its own judgment or interpretation of a labor agreement even if it believes the arbitrator's interpretation was plainly erroneous. *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991). In fact, an arbitrator's decision will bind the parties unless the award was procured by fraud or the arbitrator was not impartial due to a conflict of interests. *Id.*

 A court reviewing an arbitration award is limited to posing the narrow question of whether the award drew its essence from the collective bargaining agreement and whether the decision of the arbitrator or board manifests an infidelity to this obligation. *Chicago Cartage Co. v. Int'l Brotherhood of Teamsters, Local 710*, 659 F.2d 825, 827 (7th Cir.1981) (citing *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local 781*, 629 F.2d 1204, 1215 (7th Cir.1980)). Applying this rule in the present action, the Court need find only that the Board's decision somehow rationally derived from the Working Agreement. *Id.* The Court need not consider whether the Board reached the correct or appropriate decision. *Id.*

Article XIX of the Working Agreement is entitled "Grievance Procedure." Its provisions include the following:

> Section 20.1 Joint Trade Board. There is established Joint Trade Board [sic] consisting of three (3) members appointed by the Association, and of three (3) members appointed by the Union.

---

7. Wisconsin Statute Section 788.13 states, in part, that "[n]otice of a motion to vacate, modify or correct an award must be served upon the adverse party or attorney within 3 months after the award is filed or delivered, as prescribed by law for service of notice in an action." Wis. Stat. § 788.13.

Section 20.2 Duties of Joint Trade Board

(a) OPERATIONS UNDER AGREE-MENT. The Joint trade Board shall have the right to investigate all labor operations of the parties to this Agreement within its prescribed limits, insofar as any of the provisions of this Agreement are involved, and in connection with which any question may arise, for this purpose the Board shall have the right to summon, question and examine any party to this Agreement or their representative or agent.

(b) SETTLEMENT OF GRIEV-ANCES. The Board shall settle and adjust grievances, controversies and disputes arising under the provisions of this Agreement. In the event any such grievance, controversy or dispute should arise, and cannot be settled by the parties themselves, the affected party must give written notice to the Secretary of the Joint Trade Board within sixty (60) days in order that the matter may be referred to such Board.

(Working Agreement Art. XIX at 20.) Further, the same article states:

(e) All decisions of the Board shall be made by a majority vote.

(f) In the event the Board finds that the Articles of this Agreement have been violated by any party thereto, it shall have the power to impose fines or other penalties, if agreed to by a vote as above specified. Such fines or penalties shall be imposed against either the Union member or the Association member as the case may be, and the Board shall see that any fines or penalties so imposed are satisfied. The charitable disposition

of monies so collected shall be decided by the Board.

(Working Agreement Art. XIX at 21.) Finally, Article XX provides for submission to an arbitrator of matters that cannot be satisfactorily settled or adjusted by the Board. (Working Agreement Art. XX, Sec. 21.1.)

The Court looks to the two Board rulings that are implicated in the present action. (*See* Vangsness Aff. Ex. A; Ho Aff. Exs. C, D.)[8] The written announcement of the Board's July 16, 2002 ruling states that the Board "voted unanimously regarding the grievance of Local 19 against Insulation Systems Inc. relating to Article VII, Section 7.2 of the Working Agreement." (Vangsness Aff. Ex. A.) The cited provision of the Working Agreement limits the employment of luggers to certain tasks in certain situations. The Board's ruling of March 24, 2003 regarding the same Working Agreement provision identifies yet another unanimous vote and declares that "Insulation Systems Inc. had indeed violated the working agreement." (Ho Aff. Ex. D.) Specifically, Insulation Systems had violated the Working Agreement by "[h]aving an employee of [its] firm do covered work who is employed as a non-bargaining unit employee." (*Id.*)

█ The Court is satisfied that these rulings are drawn from the essence of the bargaining agreement. The Board's powers were exercised over grievances related to a provision of the Working Agreement discussing restrictions on the utilization of non-bargaining unit employees to perform union work. Proper notice was given to Insulation Systems in each instance and the Board subsequently exercised those

---

**8.** The Court treats Exhibit C and Exhibit D of the Ho Affidavit as the same "ruling." Both documentary exhibits have the same date. Exhibit C informs Insulation Systems that the $5,000.00 fine previously held in abeyance is due. Exhibit D announces imposition of the $25,000.00 fine. Both of these fines were levied as a result of Insulation Systems' second violation of the Working Agreement.

powers granted to it by the Working Agreement to "settle and adjust grievances, controversies and disputes arising under the provisions of this Agreement." (Working Agreement Art. XIX, Sec. 20.2.) The Board's vote in each instance was unanimous thereby obviating the need for the intervention of an arbitrator under Article XX. (*See* Working Agreement Art. XX.) In sum, there has been no violation of the Working Agreement's provisions for settling disputes through the designated mechanism of the Board. The Board was well within its authority in considering the issues before it and rendering its decisions in accordance with procedures consented to by both parties.

Local 19 further makes the argument that the Board's decision was not subject to the arbitration provisions of Article XX of the Working Agreement. (Pl.'s Br. Supp. Mot. Summ. J. at 8–9.) The first sentence of Section 21.1 of the Working Agreement states that "[i]n the event a matter cannot be satisfactorily settled or adjusted by the Joint Trade Board, and [sic] the matter shall be submitted to him for decision." (Working Agreement Art. XX, Sec. 21.1.) Though the Working Agreement does not state when a matter is considered one that "cannot be satisfactorily settled or adjusted," the Board has interpreted that phrase to mean those instances when the Board is "deadlocked" on an issue. (Vangsness Aff. at 4, ¶ 16.) [9]

The Court defers not only to the Board's interpretation of the Working Agreement for purposes of adjudicating violations of the same, but also for determining whether the Working Agreement entitles Insula-

tion Systems to potential relief from an arbitrator. Even if the Court assumed, *arguendo*, that Insulation Systems contested the denial of recourse to arbitration, the Board's interpretation of the Working Agreement's arbitration article would be given deference. A dispute over the availability of arbitration would likely come within the purview of the Board's authority to "settle and adjust grievances, controversies and disputes" arising under the Working Agreement. (*See* Working Agreement Art. XIX, Sec. 20.2(b).) Furthermore, the Secretary of the Board, Vangsness, has proffered the Board's interpretation of the arbitration article and, insofar as that interpretation is reasonable and may be said to derive from the essence of the Working Agreement, this Court will not substitute the Board's understanding with its own.

■ The Court is further satisfied that both the amount and disposition of the fines ordered by the Board are appropriate. Both the $5,000.00 and $25,000.00 fines are rationally derived from the powers granted to the Board in Article XIX, Section 20.3(f) of the Working Agreement. (Working Agreement Art. XIX, Sec. 20.3(f)); *see also Sullivan v. Lemoncello*, 36 F.3d 676, 683 (7th Cir.1994) (finding that language, including references to "penalties" and "fines," in collective bargaining agreement gave arbitration board authority to impose such costs). Article 20.3(f) of the Working Agreement confers on the Board the power to impose fines and charitably dispose of collected monies. (Working Agreement Art. XIX, Sec.

---

9. The Court is not entirely comfortable in the knowledge that Vangsness is both the business manager of Local 19 as well as the Secretary of the Board. The Court is alerted to the Board's interpretation of the Working Agreement, particularly Article XX, solely through the Vangsness Affidavit without fur-

ther support or citation. Nevertheless, the Court assumes that Vangsness' affidavit contains his own first-hand knowledge and his role as Board Secretary qualifies him to apprise the Court of the Board's interpretation of the Working Agreement's arbitration article.

20.3(f).) Therefore, similar to the imposition of fines, the choice of charitably disposing of the collected monies draws its essence from the Working Agreement.

 Finally, the Court addresses the Board's grant of attorneys' fees to Local 19. The Court notes that the Working Agreement confers on the Board "the power to impose fines *or other penalties,* if agreed to by a vote as above specified." (Working Agreement Art. XIX, Sec. 20.3(f) [emphasis added].) The Board's unanimous vote to award attorneys' fees arguably derives from the language of "other penalties" contained in the Working Agreement. Local 19 apparently relies on this interpretation and asks this Court to grant attorneys' fees incurred during this confirmation/enforcement action based solely on the rulings of the Board; no alternative argument is made based on the Federal Rules of Civil Procedure or common law.

The Board, in its two March 24, 2003 rulings, stated that "[a]ny attorneys fees incurred to collect this fine shall be borne Insulation Systems, Inc. [sic]." (Ho Aff. Exs. C, D.) The present action is somewhat unusual insofar as the Board's award of attorneys' fees presumably did not speak to costs incurred during the resolution of the matters before it. Rather, the Board effectively stated that any *future* attorneys' fees incurred by Local 19 in collecting the fines would be paid by Insulation Systems. The Court inquires whether such a future order is within the Board's authority.

 Surprisingly, there is little case law on point which guides the Court in its determination. The Court recognizes the presumption that an arbitrator's authority is broad and that courts should interpret that authority expansively. *American Postal Workers Union, Milwaukee Local v. Runyon,* 185 F.3d 832,

836 (7th Cir.1999). As long as the Board even arguably construed or applied the Working Agreement within the scope of its authority, this Court will not overturn its decision. *See Amax Coal Co. v. United Mine Workers of America, Int'l Union,* 92 F.3d 571, 575 (7th Cir.1996). The Court has already confirmed that the grant of attorneys' fees reasonably derives from the Working Agreement. The Court takes the Board's contractual interpretation granting attorneys' fees for future enforcement actions to be tantamount to an explicit provision in the Working Agreement memorializing the parties' intention to shift costs away from a prevailing party. In other words, the Board's ruling, derived from the contract, tells the Court what the parties agreed to and intended. Parties may certainly contractually agree to pay attorneys' fees and other costs in future actions, the "American Rule" notwithstanding.

To fully confirm the Board's decision, the Court requires more information regarding attorneys' fees. Local 19 has not apprised this Court of an exact amount that it seeks related to attorneys' fees for the present action. Therefore, though the Court will confirm the Board's decisions including the grant of attorneys' fees related to the present confirmation action, the Court will order Local 19 to submit a statement of fees incurred in prosecuting this action.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**

Local 19's Motion for Summary Judgment is **GRANTED.**

The Joint Trade Board rulings of July 16, 2002 and March 24, 2003 are confirmed. Insulation Systems is ordered to pay the sum of $30,000.00 as required by

the Board's rulings and in the manner therein prescribed.

Insulation Systems is ordered to pay attorneys' fees incurred by Local 19 in prosecuting the present enforcement action. To this end, Local 19 shall file a statement of attorneys' fees with the Court within 10 days of the issuance of this Order and identify any and all attorneys' fees incurred in bringing the present enforcement action in this Court. Thereafter, the Court will issue a supplemental order identifying the amount of fees to be paid by Insulation Systems.