# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3271

MERRYMAN EXCAVATION, INC.,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 150, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 5160—**Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 21, 2010—DECIDED MARCH 21, 2011

Before EASTERBROOK, *Chief Judge*, and MANION and
HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* The International Union of
Operating Engineers, Local 150, brought a series of griev-
ances against Merryman Excavation, Inc. for violations
of the parties' collective bargaining agreement. Thirteen
grievances were argued before a joint grievance com-
mittee, as provided in that agreement. Local 150 prevailed

on nine grievances, and was awarded a total of $96,364.72 by the joint committee. Merryman filed this action seeking to vacate the joint committee's awards under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; Local 150 counterclaimed to enforce the nine awards. The district court granted summary judgment to Local 150. Because the parties agreed that the joint committee's awards would be final and not subject to review, and there is no evidence that Merryman was not equally represented on the committee, we affirm.

## I.

In 2000, Merryman signed a Memorandum of Agreement, adopting the terms of the Heavy and Highway and Underground Agreement, a collective bargaining agreement between Local 150 of the International Union of Operating Engineers and the Mid-America Regional Bargaining Association (MARBA). Local 150 represents members in the construction industry throughout Illinois, Iowa, and Indiana; MARBA represents employers in the Chicago area for collective bargaining in the construction industry—Merryman is not a member of MARBA. The agreement contained typical provisions requiring that work be assigned to Local 150 members, when available, and setting the wages and working conditions. It also required grievances—defined as "any claim or dispute involving an interpretation or application of the Agreement"—to exhaust an informal dispute resolution procedure, culminating in a hearing before a joint grievance committee. Such committees

are comprised of an equal number of representatives from the employers' association and Local 150. A decision by a majority vote of this joint committee is "final and binding on all parties and individuals bound by [the] agreement," and no appeal is permitted. If the joint committee deadlocks, the agreement then allows for formal arbitration proceedings.

Beginning in April 2006, several Local 150 business agents initiated grievances against Merryman for violations of various provisions of the collective bargaining agreement. Ten of these grievances were brought before the joint grievance committee for a hearing on August 2, 2006. There were three employer representatives at the hearing, and a number of union members. Some of the union members were there to present grievances they had filed as business agents, others to represent the union on the joint committee; a few played both roles but did not vote on grievances they each presented.

Merryman was represented by its attorney, Scott Hanlon, despite the agreement's prohibition on attorneys speaking at joint committee hearings. In response to an objection by Steven Cisco, Local 150's corresponding secretary and a member of the joint committee, Hanlon indicated that he was employed by Merryman as its "business representative" and not functioning as its attorney at the hearing. Hanlon objected to the presence of Local 150 member Charles August, who was a defendant in a previous lawsuit filed by Merryman, and objected to his voting on any grievance. Hanlon also objected to the committee's jurisdiction over many of the

particular grievances, arguing that they were untimely filed under the terms of the agreement and that there was no meaningful attempt to settle. After the committee heard the first two grievances, one of the employer representatives on the committee, Joseph Vignocchi, had to leave; the committee unanimously agreed to proceed with only two voting members on each side. Hanlon objected, arguing that the procedural rules required at least three voting members for each side, but was informed that the decision was "between the committee." The mood of the hearing only worsened from its inimical beginning, and Cisco and Hanlon bickered throughout: in response to Hanlon's questions on the rules of procedure, Cisco told him he had a copy and asked, "Have you graduated from first grade? Can you read, my friend?" and additional procedural objections elicited "I ain't going to sit here and listen to this . . ." from Cisco. Cisco vociferously argued in favor of the union's positions throughout the hearing.

Six of the grievances were relatively minor claims that Merryman had hired non-Local 150 members when there were Local 150 members on the out-of-work list, and Merryman put up very little defense at the hearing; the parties settled two of these, the committee deadlocked on one, and Merryman was ordered to pay a total of $1725.44 to Local 150's assistance fund for the remaining three. Two were claims that Merryman improperly terminated Local 150 members without adequate notice or cause—also relatively minor in terms of the damages sought—and the committee deadlocked on one of these claims and awarded $660.62 to the injured

union member in the other. The final two union grievances, which accounted for the vast majority of damages sought, claimed that Merryman operated machinery without the contractually required laborers; the union won both of these and was awarded $77,426.96 for Merryman's ongoing failure to have a night operator for a generator that powered a pump 24 hours a day, and $8,046.16 for its failure to employ a second union member as an "oiler" on a large digging machine.

That October, the joint committee heard three more grievances against Merryman. Hanlon again represented Merryman as its "business representative," over Cisco's objection, and the two picked up their hostility right where they had left off. Hanlon again objected to the jurisdiction of the committee to hear the grievances because some of the members of the committee were biased due to the pendency of this lawsuit, already filed in challenge to the August awards. He also objected to the individual grievances on procedural grounds, arguing that the union had not satisfied the pre-grievance steps by making a good-faith attempt to resolve the disputes. The joint committee resolved all three grievances in the union's favor by majority vote. For one instance of hiring non-Local 150 members, the committee awarded $451.27; for a layoff over the phone in violation of the agreement, $549.80 (part to be paid to the injured Local 150 member and part to the union's fringe benefit fund); and for running a pump at night for a week without an operator, $7,262.52.

Merryman filed its initial complaint in the district court in September 2006, seeking, under section 301 of the

Labor Management Relations Act, to vacate the six awards the joint committee entered at the August 2 hearing. The complaint alleged violations of the collective bargaining agreement, including that the joint committee was not composed of an equal number of employer and union representatives and that the individual grievances were marred by various failures to comply with mandatory dispute resolution steps. In addition to Local 150 and MARBA, and despite the fact that the complaint sought only a declaration vacating the joint committee awards, it named as defendants everyone present at the August hearing. By June 2007, after several pleading amendments, Merryman's third and final amended complaint also included a request to vacate the October joint committee awards, and sought relief against the individual defendants for allegedly conspiring to breach their fiduciary duties to Merryman and for conspiring to defraud it in violation of the Racketeer Influenced Corrupt Organizations Act (RICO). Local 150 counterclaimed to enforce the awards.

The following February, the district court dismissed the RICO charge with prejudice and Merryman has not appealed this dismissal. The parties filed cross-motions for summary judgment on the remaining counts. Six months later, the district court granted Local 150's motion and denied Merryman's. It held that many of Merryman's allegations had been waived due to its failure to raise them before the joint committee, and that the non-waived procedural arguments were without merit. It considered Merryman's allegations of bias—raised only in Merryman's response to Local 150's

motion for summary judgment—and, after its own scan of the record for evidence of bias or partiality, it saw no "direct evidence" of "evident partiality." Finally, it found the state law civil conspiracy and breach of fiduciary duty claims preempted by section 301 because they required an interpretation of the collective bargaining agreement. Merryman appeals.

## II.

We review de novo a district court's decision on cross-motions for summary judgment. *Prate Installations, Inc. v. Chicago Regional Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010). But our consideration of the joint committee's underlying decision is another matter: as long as the parties agreed that this method of dispute resolution would be binding, it is "not open to the courts to reweigh the merits of the grievance." *General Drivers, Warehousemen and Helpers, Local 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963).

In their briefs, the parties to this appeal seem to have treated the joint committee at times as if it were a genuine arbitration panel. Their confusion on this point is understandable in view of some of our previous opinions. *See Chicago Cartage Co. v. Int'l Bhd. of Teamsters, Local 710*, 659 F.2d 825, 827 (1981); *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 921 (7th Cir. 1989). In any event, a federal court "retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 99 (1991);

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) ("Federal courts are entitled to apply the right body of law, whether the parties name it or not.").

This case crystallizes the problem much more sharply than our previous cases have. We wish to make clear that a joint committee is not a genuine arbitration subject to the Federal Arbitration Act (FAA) and the full requirements of impartiality that apply to genuine arbitration. A failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301 jurisdiction—not an FAA action. See *Riss & Co.*, 372 U.S. at 519. The basic issue we must decide is whether any circumstances justify Merryman's refusal to comply with the joint committee awards in these grievances. If not, then Merryman has breached the relevant labor contract by refusing to comply.

Merryman's arguments on appeal that the joint committee award should not be enforced can be grouped into three basic contentions: first, that the joint committee hearing and the dispute resolution process as a whole were marred by numerous procedural errors; second, that the joint committee exceeded its authority under the contract by ordering that awards be paid to the union assistance fund, rather than individual union members; and, third, that on top of its other failings, the joint committee was biased against Merryman and partial toward Local 150. But as we have noted, all disputes involving the application or interpretation of the agreement are subject to the binding dispute resolution procedures contained in the

agreement. The only argument that Merryman may properly make in this litigation is that it did not receive the procedures to which it agreed, and so we consider its arguments in this light.

## A. Grievance Procedures

Merryman contends that the joint committee hearing was fatally flawed procedurally because Local 150 did not follow the multistage grievance resolution procedure outlined in the agreement. This process involves informal non-binding settlement negotiations as well as an informal binding joint grievance committee hearing for unsettled disputes. Finally, if the joint committee cannot reach a binding decision by majority vote, formal arbitration begins.

Merryman first complains that the committee should not have heard many of the grievances because the union failed to follow the required steps before bringing the grievances to the joint committee.[1] A challenge to the pre-

---

[1] The district court held that Merryman waived judicial review of many of its specific contentions when it failed to present its arguments before the joint committee, as would be the case if this were a review of an arbitration award. But as we have already noted, the joint committee dispute resolution is fundamentally different from arbitration. And just as "permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would undermine the purpose of arbitration, which is to provide a fast

(continued...)

grievance procedures approved by the joint committee, however, is a "claim or dispute involving an interpretation or application of the Agreement" and therefore subject to binding resolution by the joint committee. *Riss & Co.*, 372 U.S. at 519. Considered in this light, Merryman's first argument is readily disposed: as long as the joint committee was properly composed, it had the authority to resolve the dispute over whether Local 150 followed the proper pre-grievance procedures.

Merryman raises two other procedural claims that at least superficially attack the composition of the joint committee itself. First, it argues that there were more union representatives than employer representatives present at the joint committee hearing.[2] But it has no

---

[1] (...continued)
and inexpensive resolution of labor disputes," *National Wrecking Co. v. Int'l Bhd. of Teamsters, Local 710*, 990 F.2d 957, 960-61 (7th Cir. 1993), so too would applying a strict waiver undermine the purpose of joint committee awards. Procedural niceties are the very sort of formalities that the parties seek to avoid when they contract to substitute informal mechanisms for formal arbitration or judicial review. Here, no one involved has any training or expertise in legal proceedings—lawyers for the parties are not even allowed to speak.

[2] Merryman argues that we should follow *M.J. Electric, Inc. v. Int'l Union of Op. Eng'rs, Local 150*, 2003 WL 21640474, at *5 (N.D. Ill., July 10, 2003), wherein the court reasoned that the mere presence of a greater number of union representatives at a joint committee hearing violated the plain language of an

(continued...)

evidence that Local 150 had more voting representatives, or even that there were an unequal number of representatives present during the executive session in which the committee members cast their votes.[3] So it cannot argue that it was underrepresented in the ultimate vote, merely that it disagrees with the manner in which the joint committee handled its proceedings. A collective bargaining agreement could lay out detailed procedural rules for joint committee hearings, but *this* agreement does not. Merryman received the process to which it agreed.

---

[2] (...continued)
identical agreement requiring equal representation. We disagree: *M.J. Electric* overreached by reviewing the merits of the joint committee's interpretation of the equal representation provision in the agreement. To reiterate: it does not matter whether the joint committee's interpretation is *correct*, only that the parties agreed that the joint committee's interpretation would be binding. Moreover, Merryman has abandoned the argument it made below that Local 150, as a party to *M.J. Electric*, was precluded from relitigating the equal representation issue. *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009) ("[U]nsupported and underdeveloped arguments are waived.").

[3] At oral argument, Merryman's attorney could not point us to any evidence that it had even attempted to uncover in discovery the breakdown of the joint committee vote on each grievance, which would surely be a prerequisite to uncovering bias on the part of the majority of panel members who voted in Local 150's favor.

Second, Merryman argues that there was an insufficient number of representatives to establish a quorum. But the grievance provisions do not require a minimum number of representatives, only equal representation, and an equally composed joint committee decided that it would proceed with only two representatives from each side. Merryman argues that this decision was inconsistent with the committee's own procedural rules, but those separate procedural rules do not form a part of the agreement.

## B. Awards to Funds Benefitting Union Members

Merryman also challenges the decision by the joint committee to designate the awards to funds maintained by the union rather than to specific union members themselves. It argues that this is a violation of Article I, Section 11 of the collective bargaining agreement, in which the employer "[a]grees to compensate the bargaining unit member who would have worked but for the Employer's violation of [the Assignment of Work] Section . . . for all hours the bargaining unit member would have worked but for the Employer's violation."

Once again, because this question involves an interpretation or application of the collective bargaining agreement, it is entrusted to the joint committee's binding final decision and not subject to our review. The parties agreed that the joint committee would have plenary power to resolve disputes arising under the collective bargaining agreement. The agreement does not limit the committee's authority to settle the dispute in any manner that it finds appropriate.

## C. Bias

Finally, Merryman argues that the district court should have vacated the joint committee awards because the committee was biased against it. It is true that "evident partiality" is one of the few bases on which a court may invalidate the decision of a supposedly neutral arbitrator. 9 U.S.C. § 10(a)(2). But we reiterate that joint committees are not genuine arbitration and that provisions of the FAA do not apply to these awards. Merryman agreed that disputes would be resolved in the first instance not by a neutral arbitrator but by a committee composed of an equal number of employer and union representatives. The agreement does not require the representatives on the joint committee to act like detached magistrates or neutral arbitrators.[4] Rather, we rely on the balanced voting membership of the joint

---

[4] Citing *Thomas*, 890 F.2d at 921, Merryman argues that we have endorsed, and should now enforce, a duty of impartiality for joint committee members similar to that of an arbitrator or judge. But *Thomas* held only that while the union's duty of fair representation does not require the union representatives to vote in a union member's favor, the union representative could not be partial *against* the union member. Whatever the *Thomas* court meant in its *obiter dictum* that the union's role on a joint committee "is essentially that of an arbitrator," it surely did not mean to suggest that we apply a judicial or arbitral standard of impartiality to joint committee members. Such a standard would be patently unsuitable for joint committee members, who are "representatives" specifically chosen because they are ostensibly partisans of one side to a collective bargaining agreement.

committee to provide fairness to the interested parties. Absent evidence that Merryman was not equally represented among the voting members of the joint committee,[5] it is bound by the committee's decision.

In *Chicago Cartage Co.*, 659 F.2d at 828, one of the few cases from this circuit reviewing a claim of bias against an employer by a joint committee, we considered similar, if not worse, conduct by union representatives on a joint committee and upheld the decision. *Chicago Cartage* followed the parties' lead and assumed, without holding, that the joint committee award should be reviewed as an arbitration award and was subject to challenge on grounds of evident partiality or bias. Today we hold that, contrary to our assumption in *Chicago Cartage*, joint committee awards should not be treated as arbitration subject to the standards of the FAA. But *Chicago Cartage* rested its decision on the fact that at least one of the employer representatives must have voted against the employer and that therefore any bias against the employer by union representatives did not affect the joint committee's decision. This is entirely consistent with our holding today: absent evidence that Merryman was not equally represented on the joint committee, the joint committee's decision is binding and not subject to appeal.

---

[5] We express no view on the question of whether bias against an employer by the *employer's* representatives, due to collusion or some other factor, would invalidate a joint committee award.

### III.

In sum, because the collective bargaining agreement establishes that any resolution of a grievance by majority vote of the joint committee is "final and binding on all parties and individuals bound by" the agreement and not subject to appeal, we are not permitted to review the merits of the procedure or substance of the joint committee's decisions. Absent any evidence that Merryman did not receive the dispute resolution procedure to which it agreed, i.e., an equal number of voting representatives on the joint committee, the district court correctly granted summary judgment to Local 150. Accordingly, the decision below is AFFIRMED.