In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1613

WILLIAM CHARLES CONSTRUCTION
COMPANY, LLC,

*Plaintiff-Appellant*,

*v.*

TEAMSTERS LOCAL UNION 627,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-cv-01306 — **James E. Shadid**, *Chief Judge*.

ARGUED FEBRUARY 19, 2016 — DECIDED JUNE 29, 2016

Before MANION and ROVNER, *Circuit Judges*, and BLAKEY,
*District Judge*.*

MANION, *Circuit Judge*. William Charles Construction
Company, LLC ("William Charles") entered into a labor
agreement with the Illinois Department of Transportation

---

* Hon. John Robert Blakey, District Judge, Northern District of Illinois,
sitting by designation.

("IDOT") for a construction project to expand a section of a two-lane highway into four lanes. At the start of construction, a jurisdictional dispute[1] arose between two unions, each claiming the right for their member drivers to operate the large trucks involved in the excavation work. The dispute was eventually resolved by an arbitrator, but a subsequent award by a Joint Grievance Committee ("JGC") under a subordinate collective bargaining agreement caused another problem.

That problem is the main subject of this case. William Charles and Teamsters Local Union 627 ("Teamsters") dispute the validity of the JGC award. The award determined that William Charles owed the Teamsters back pay and fringe benefit contributions (amounting to approximately $1.4 million) for having assigned the operation of the heavy trucks to the International Union of Operating Engineers Local 649 ("Engineers") rather than the Teamsters. The case also involves a second, much smaller, JGC award that determined that William Charles was liable for two days' back pay for having assigned work to two Teamsters in violation of two other Teamsters' seniority rights.

William Charles filed a declaratory action under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, to establish that the arbitration award was the only enforceable award, which would have meant that the JGC awards were invalid. The Teamsters filed a counterclaim seek-

---

[1] A jurisdictional dispute is a "dispute 'between two or more groups of employees over which is entitled to do certain work.'" *Miron Const. Co. v. Int'l Union of Operating Eng'rs, Local 139*, 44 F.3d 558, 566 (7th Cir. 1995) (quoting *N.L.R.B. v. Radio & Television Broad. Eng. Union*, 364 U.S. 573, 579 (1961)).

ing enforcement of the JGC awards and a motion for summary judgment on the complaint and counterclaim. The district court granted the Teamsters' motion for summary judgment after finding that William Charles filed its complaint outside the statute of limitations for challenging the awards.

We reverse the district court's grant of summary judgment to the Teamsters, dismiss the Teamsters' counterclaim for enforcement of one of the JGC awards, and remand for further proceedings. William Charles's challenge to the JGC awards is not barred by the statute of limitations because William Charles did not receive notice of the awards' final entry. Furthermore, the greater of the two JGC awards is void because William Charles did not agree to arbitration by the JGC.

## I. Background

In January 2013, IDOT started the Biggsville Project. The project's aim was to widen Route 34 from two lanes to four where it ran past Biggsville, Illinois, a very small town near the western border of central Illinois. IDOT required the various contractors and unions involved to sign a Project Labor Agreement ("PLA"). The PLA served as a master Collective Bargaining Agreement ("CBA") for everyone working on the project. The PLA required that signatories abide by the pertinent CBAs then in force between the various contractors and unions, provided that the CBAs did not conflict with the PLA. In the event of a conflict, the PLA controlled. The PLA provided that labor disputes were to be resolved by the grievance procedures of the applicable CBA. However, and importantly, the PLA specifically excluded jurisdictional labor disputes from this provision. Instead, the PLA provided its own method for resolving jurisdictional disputes and provided

that such resolutions would be final. Both William Charles and the Teamsters were signatories to the PLA.

Work on the Biggsville project began in May 2013. William Charles's work included the use of sixteen articulated-end dump trucks ("AED trucks"). AED trucks are big off-road dump trucks that bend in the middle like semi-trucks. Because they are a cross between a standard dump truck and a piece of heavy construction equipment, they are within the jurisdictions of both the Teamsters and the International Union of Operating Engineers. At a pre-job conference on May 15, 2013, William Charles assigned the operation of its AED trucks to the Engineers, despite the Teamsters' objection that the work should be assigned to them. Work commenced on the Biggsville project with the Engineers operating the AED trucks.

Work continued on the project for approximately four months and was approximately 90% complete when, in late September 2013, the Teamsters brought a jurisdictional grievance under the PLA against the Engineers over the operation of the AED trucks. The dispute proceeded to arbitration on October 30, 2013, before Glenn A. Zipp, one of the PLA's pre-designated, neutral arbitrators. Zipp recognized that William Charles's past practice was to assign AED trucks to Engineers in all but two counties. He also recognized that using the Engineers was likely more efficient since the drivers also had to operate scrapers, which was undisputedly the jurisdiction of the Engineers. Nevertheless, Zipp ruled that the PLA required him to apply a pre-existing jurisdiction agreement between the two unions, and that the agreement required the AED trucks to be assigned to the Teamsters. William Charles accepted the decision and reassigned the work to the Teamsters

the next day. (At this point, only six trucks remained in use because the project was nearly complete.) William Charles then signed a participation agreement with the Teamsters' benefit fund, and began making benefit contribution payments. Zipp's decision did not award the Teamsters any back pay or benefits.

On November 5, 2013, five days after Zipp's ruling, the Teamsters filed a new grievance. This time the grievance was against William Charles instead of the Engineers. The grievance alleged the same conduct complained of in the Teamsters' previous grievance against the Engineers, that is, that William Charles assigned the operation of sixteen AED trucks on the Biggsville project to the Engineers over the objection of the Teamsters. The Teamsters did not submit their grievance under the PLA. Instead, they submitted it under a CBA between the Associated General Contractors of Illinois ("AGCI") and the Illinois Conference of Teamsters called the Articles of Construction Agreement ("ACA"). The grievance alleged that William Charles violated several articles of the ACA by assigning operation of the AED trucks to the Engineers. However, the sole rationale given for why the assignment was a violation of the ACA was Zipp's ruling in the previous jurisdictional dispute that the operation of the trucks was the work of the Teamsters.

William Charles was not a signatory to the ACA. However, since the ACA was the applicable area-CBA for the Teamsters, the PLA required William Charles to abide by it, but, importantly, only so long as it did not conflict with the PLA. Under the ACA's dispute resolution mechanisms, disputes were first referred to a JGC comprised of equal membership from the AGCI and the Teamsters. (William Charles

was not a member of the AGCI, though some of its competitors were.) Only if the JGC was deadlocked could the dispute be referred to an outside arbitrator.

In a letter to the Teamsters dated November 20, 2013, William Charles's general superintendent, James Kohlhorst, objected to the new grievance. Kohlhorst wrote that the grievance was really just the previous jurisdictional dispute between the two unions, not a misassignment by William Charles. Further, William Charles could not be responsible for back pay or benefits for the period during which the Engineers were operating the AED trucks because it did not sign a participation agreement with the Teamsters' funds until after it reassigned the operation of the trucks to the Teamsters. Finally, Kohlhorst reminded the Teamsters that Zipp's decision did not include back pay or benefits and that the PLA did not provide for such remedies in jurisdictional disputes.

On December 2, 2013, the Teamsters filed another grievance with the JGC against William Charles. The grievance concerned a violation of seniority rights and was unrelated to any jurisdictional dispute. The grievance alleged that, on two occasions, William Charles assigned the operation of AED trucks to two Teamsters with less seniority than two other Teamsters. It sought lost wages and benefits for the drivers affected.

The JGC heard the Teamsters' two grievances along with several others on March 26, 2014. Kohlhorst was present at the meeting. According to Kohlhorst, he objected at the hearing to the JGC's authority to hear the grievances.[2] He also alleges

---

[2] Although William Charles argued in the district court that the Teamsters could not file a grievance outside of the PLA and that the JGC lacked

that no evidence was admitted, no witnesses were sworn, no cross-examination was allowed, and no transcript was made. The president of Teamsters Local 627, Jason Gleason, also attended the hearing. Gleason alleges that Kohlhorst never objected to the JGC's ability to hear the grievances and only argued the merits. He also alleges that all parties were able to question witnesses, raise arguments, and present evidence. Gleason claims that immediately after the hearing the JGC voted unanimously in favor of the union on both grievances.

On April 3, 2014, the Director of Labor Relations for the AGCI, Frank Kazenske, sent Kohlhorst an email with a "written decision from the Teamsters." The decision concerned only the AED truck grievance, the one based on Zipp's decision. It found that William Charles violated the ACA by using the Engineers and directed William Charles to "cease and desist from such violation in the future and to make whole for all lost wages and all benefits to those persons … who … would have performed the work." The decision did not award a specific dollar amount, nor did it provide a method for calculating the amount. The decision was not a separate document attached to the email. Rather, Kazenske had copied the text of the decision into the body of the email. The email informed Kohlhorst that the "written decision ha[d] been sent to the AGCI management committee members for their review and approval." Three weeks later, on April 24, 2014, Kohlhorst wrote a letter to Kazenske disputing the JGC's authority to hear disputes between it and the Teamsters.

---

authority to decide any grievance between the parties, it does not maintain that argument on appeal. William Charles concedes that the JGC could hear the seniority grievance, but continues to maintain that the JGC could not hear the grievance based on Zipp's decision.

William Charles considered the emailed decision to be a non-final, proposed decision. William Charles alleges that it never received a final decision for either grievance, and that the first indication that there was a final decision came on July 17, 2014 (104 days after William Charles received the email), when the Teamsters' attorney called William Charles and demanded $1.4 million in back pay and benefits. The Teamsters, on the other hand, contend that the final decision was made at the March 26 hearing, and that the written decision in Kazenske's email was merely the final decision reduced to writing.

William Charles filed its declaratory action on July 31, 2014, two weeks after the Teamsters demanded payment. The Teamsters answered with a counterclaim for enforcement of the JGC's two awards. As an exhibit to their counterclaim, they included pages from a memorandum which contained the grievance decisions from the JGC's March 26 meeting. The memorandum was on Teamster letterhead and dated April 3, 2014. It included the same decision from the April 3 email. It also included the JGC's decision on the seniority grievance, which was to award the two affected Teamsters one day's pay of eight hours each. According to William Charles, this was the first time they had seen anything concerning the JGC's decision on the seniority grievance.

The Teamsters filed a motion for summary judgment on the complaint and counterclaim, which the district court granted. The district court concluded that Illinois' 90-day statute of limitations for challenging arbitration awards was an absolute bar, even to William Charles's claim that it had never agreed to allow the JGC to hear the grievances. It found that

both grievances, which the court characterized—without explanation—as non-jurisdictional grievances, were properly referred to the JGC in accordance with the ACA. Finally, the district court ruled that William Charles's attempt to invalidate the JGC awards was barred by the limitations period, because William Charles received notice of the JGC awards from Kazenske's April 3 email.

## II. Analysis

We review a grant of summary judgment *de novo*, viewing all facts, and drawing all reasonable inferences, in favor of the nonmoving party. *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993). Summary judgment is proper if the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. We construe the evidence in the light most favorable to William Charles, the nonmoving party, and draw all reasonable inferences in its favor. *Tibbs v. City of Chicago*, 469 F.3d 661, 664 (7th Cir. 2006).

### A. William Charles's challenge to the JGC awards is not barred by the statute of limitations because William Charles did not receive notice of the awards' final entry.

William Charles argues that the district court committed error by finding that its challenge to the JGC awards was untimely. Specifically, William Charles argues that the district court should have found that the statute of limitations did not run because it did not receive notice of the JGC's final decision on either the AED truck grievance or the seniority grievance. Although a joint committee is not a genuine arbitration panel, we treat its awards as arbitration awards for most purposes. S*ee Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs,*

*Local 150*, 639 F.3d 286, 290 (7th Cir. 2011); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1026–27 (7th Cir. 1980). For actions challenging an arbitration award under § 301 of the LRMA, we look to the statute of limitations from a comparable action in the forum state. *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir. 1989). The Illinois Arbitration Act provides a 90-day statute of limitations for challenging an arbitration award. 710 ILCS 5/12(b). A failure to challenge an arbitration award within the applicable limitations period renders the award nearly impervious to attack. *Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987). An arbitration award is final "if the arbitrator himself thinks he's through with the case." *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002). The 90-day statute of limitations for challenging the arbitration award begins to run "after delivery of a copy of the award to the applicant [challenging the award]." 710 ILCS 5/12(b).

The district court found that William Charles had sufficient notice of the decisions based on Kazenske's April 3 email and Kohlhorst's April 24 letter to Kazenske objecting to the JGC's authority to hear the grievances. On the contrary, Kazenske's email contained the text of the AED truck decision only, not both decisions as the district court had found. Doc. 28-3 at 56–57. Furthermore, though the district court quoted the content of the Kazenske's email, it made nothing of Kazenske's statement that "[t]his written decision has been sent to the AGCI management committee members for their review and approval." The import of this statement is clear: the decision was not final; the JGC did not consider itself "through with the case" because it was awaiting the review

and approval of its contractor members. *Smart*, 315 F.3d at 725. In spite of Kazenske's statement, the district court found that the JGC made its final decisions at the March 26 hearing and reduced those decisions to writing on April 3. To make this finding, the district court accepted the Teamsters' version of the facts at summary judgment, a version that contradicts the record. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). On the contrary, Kazenske's email contained, not a final decision on the AED truck grievance, but a proposed decision by the Teamsters which required the approval of the JGC's contractor members. Furthermore, the record contains no communication that can be construed as notice to William Charles that the proposed AED truck decision was ever approved. Notice cannot be inferred from the April 24 letter from Kohlhorst to Kazenske. Viewed in the appropriate light, that letter is best construed as an attempt by William Charles to stave off a final decision by reminding the JGC that it had no authority to decide the matter.

As for the seniority grievance, the record is completely devoid of any communication to William Charles of the substance of the JGC's decision on that grievance. Kohlhorst was at the March 26 hearing, where the JGC may have announced its final decision on the grievance. But again, whether a final decision was made at that time is a disputed fact, and given the Teamsters' proposed decision on the AED truck grievance, the proper inference for summary judgment is that the JGC did not make a final decision at the hearing on the seniority

grievance either. But more importantly, whether the JGC an-
nounced its final decision at the March 26 hearing is irrelevant
to the issue of timeliness, because the statute of limitations
does not start upon the announcement of a final decision, but
"after delivery of a copy of the award." 710 ILCS 5/12(b).

Viewing the record in the light most favorable to William
Charles, the first time William Charles received any indication
that the JGC considered its decisions on the two grievances to
be final was on July 17, 2014, when the Teamsters' attorney
called William Charles to demand $1.4 million. Yet, the Team-
sters' demand still did not start the clock because it did not
constitute "delivery of a copy of the award." 710 ILCS 5/12(b).
Viewing the record under any type of light, the first time Wil-
liam Charles received a copy of the JGC's final decisions was
when the Teamsters filed one as an exhibit to their counter-
claim, on September 24, 2014. Unlike the Teamsters' previous
attempt at notice, where just one decision was cut and pasted
into an email with a caveat that approval was pending, this
time both decisions were issued in a formal memorandum on
Teamsters letterhead. This is the copy the Teamsters should
have delivered to William Charles from the beginning. Thus,
William Charles's challenge to the JGC awards was timely,
and the district court's finding otherwise was in error.

**B. The JGC's AED truck award is void because William
Charles did not agree to arbitration by the JGC.**

In *AT&T Technologies, Inc. v. Communications Workers of
America*, 475 U.S. 643 (1986), the Supreme Court reiterated the
principle that "'arbitration is a matter of contract and a party
cannot be required to submit to arbitration any dispute which
he has not agreed so to submit.'" *Id*. at 648 (quoting *Steelwork-
ers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The Court explained that "[t]his axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id*. at 648–49. The Court continued:

> The second rule, which follows inexorably from the first, is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

*Id*. at 649 (citing *Warrior & Gulf*, 363 U.S. at 582–83).

William Charles argues that the JGC's AED truck award is void because the grievance was not arbitrable. According to William Charles, it did not agree to submit the grievance to the JGC because the grievance was jurisdictional and the PLA provided the exclusive remedy for jurisdictional disputes. The Teamsters agree that the PLA provided the exclusive remedy for jurisdictional disputes, but they disagree that the AED truck grievance was a jurisdictional dispute. They maintain that the district court was correct to call the grievance a non-jurisdictional dispute. They point out that William Charles agreed to abide by the ACA when it signed the PLA, and that the AED truck grievance alleges that William Charles violated several articles of the ACA: "Article 5, Para[.] 2, Articles 10, 11, 12, 13 & all other applicable Articles." Doc. 28-2 at 166. But, as William Charles points out, the language of Article 5 upon which the Teamsters rely explicitly concerns jurisdiction: "The operation of all equipment shall be assigned to the

proper craft jurisdiction." *Id*. at 140. (The remaining articles cited by the grievance concern the payment of wages and benefits and are therefore relevant only to damages. *Id*. at 142–47.)

Not only was the AED truck grievance jurisdictional in nature, for all intents and purposes, it was the previous jurisdictional grievance between the Teamsters and the Engineers that was resolved by Zipp's final award on October 31, 2013. The Teamsters admitted as much by stating on the form for the AED truck grievance that they made efforts to resolve the grievance at the local level on May 15 and 17, 2013. *Id*. at 166. That was when they objected to the assignment of the AED trucks to the Engineers at the pre-job conference. Appellant's Br. at A32. Zipp's decision against the Engineers did not award the Teamsters any back pay or benefits. Rather than seek recovery from the Engineers, who were the ones to receive the benefit of the five months of assigned work, the Teamsters sought recovery from William Charles. But William Charles had already paid once for that work and, because of the Teamsters' overreach, risked the possibility of paying twice for the same work.

It is true that, by signing the PLA, William Charles agreed to abide by the ACA and agreed that labor disputes with the Teamsters were to be resolved by the grievance procedures of the ACA. Yet, William Charles also agreed—as did the Teamsters—that "the terms and conditions of th[e] PLA shall supersede and control" the ACA. Appellant's Br. at A16. One of those terms was that jurisdictional disputes could not be resolved by the grievance procedures of an applicable CBA. Instead, "[t]he PLA Jurisdictional Dispute Resolution Process … set[] forth the procedures … to resolve jurisdictional disputes

between and among Contractors, Subcontractors, and Unions engaged in the building and construction industry." *Id*. at A21. William Charles did not agree to have jurisdictional disputes decided under anything but the PLA; clearly then, William Charles did not agree to have the Teamsters' AED truck grievance decided by the JGC.

Furthermore, even if the issue of damages for the jurisdictional dispute could be separated from the injury, William Charles did not agree to have any such severable issues decided by the JGC. Another term of the PLA agreed upon by the parties was that the "[PLA] Process [would] be followed for any grievance or dispute arising out of the interpretation or application of [the] PLA." *Id*. The AED truck grievance before the JGC arose from Zipp's decision that the operation of the AED trucks was the work of the Teamsters. Zipp's decision was a result of "the interpretation or application of [the] PLA," namely, that the PLA required him to apply a pre-existing jurisdiction agreement between the two unions. *Id*. Therefore, William Charles did not agree to have the issue of damages (back pay and benefits) for the jurisdictional dispute decided by the JGC either. Consequently, the district court's finding that the AED truck grievance was properly before the JGC was error.

### C. *William Charles's challenge to the AED truck grievance's arbitrability is not waived.*

This does not completely resolve William Charles's challenge to the AED truck award, though. According to the Teamsters, William Charles waived its challenge to the grievance's arbitrability by participating in the JGC hearing without properly preserving its objection. "If a party voluntarily and unreservedly submits an issue to arbitration, he cannot

later argue that the arbitrator had no authority to resolve it." *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175 (7th Cir. 1985). To avoid waiver, a party must "clearly preserve[] the question of arbitrability for judicial determination." *Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc.*, 900 F.2d 1005, 1010 (7th Cir. 1990). It can do this by "carefully and explicitly, in unambiguous language, ma[king] known to the arbitrator and the union its clear intention that it [is] maintaining its objections to arbitrability even though it [is] agreeing to proceed with the arbitration hearing." *Id*. at 1009.

To show that it did not waive its arbitrability objection, William Charles relies on the affidavit of Kohlhorst. He testified that he appeared at the hearing, advised the JGC that William Charles disputed the Teamsters' ability to bring the grievance to the JGC, and did not otherwise participate in the hearing. The Teamsters attempt to dispute this testimony with the declaration of Gleason. He declared that prior to this lawsuit William Charles never claimed that the JGC lacked the authority to hear the grievances and that William Charles's arguments at the hearing were directly related to the merits of the grievances, not to the JGC's lack of the authority to decide them. Gleason's statement, however, is directly contradicted by Kohlhorst's November 20 letter, in which he referred to the AED truck grievance as a "so called grievance." Kohlhorst wrote that the AED truck grievance was nothing more than the previous jurisdictional dispute decided by Zipp, that William Charles had not signed a participation agreement with the Union at the time of the dispute, and that the PLA did not provide for back pay in jurisdictional disputes. In other words, he asserted that the grievance was covered by the PLA, not the ACA.

William Charles disputed the JGC's authority before and after the March 26 hearing. Gleason's declaration is insufficient to refute Kohlhorst's sworn testimony that William Charles also disputed the JGC's authority during the hearing. Gleason admits in his declaration that William Charles essentially presented the same argument it raised in its November 20 letter, that is, that the AED truck grievance was decided under the PLA by Zipp, which precluded the JGC from issuing an award. This was sufficient for William Charles to preserve its argument under *Fansteel*, for we do not apply the same strict waiver rule to joint committee dispute resolution as we do to genuine arbitration. *See Merryman Excavation*, 639 F.3d at 290–91 n.1 (declining to apply a strict waiver because it would "undermine the purpose of joint committee awards" where "[p]rocedural niceties are the very sort of formalities that the parties seek to avoid when they contract to substitute informal mechanisms for formal arbitration or judicial review … no one involved has any training or expertise in legal proceedings—lawyers for the parties are not even allowed to speak").

## III. Conclusion

For the foregoing reasons, the statute of limitations does not bar William Charles from challenging the JGC awards and the JGC's AED truck award is void because the grievance was not arbitrable. Accordingly, the judgment of the district court is REVERSED, the Teamsters' counterclaim for enforcement of the JGC's AED truck award is DISMISSED, and the case is REMANDED for further proceedings consistent with this opinion.